# Court of Appeals.

## May 4, 1897.

## PEOPLE v. JOSEPH LEDWON et al.

1. CRIMINAL LAW—COURT OF APPEALS.

Where the judgment is not one of death, the jurisdiction of court of appeals is confined to questions of law.

2. SAME—DUTY OF TRIAL COURT.

It is made the duty of the court, where it deems the evidence insufficient to warrant a conviction, to advise the jury to acquit, and the jury must then obey the advice.

3. SAME.

The defendant is not confined to any form of words, in presenting to the court, the question of his right to be acquitted. All that is necessary is that in some intelligible form there should be presented to the court, for its ruling and decision, the question that there is no evidence for the jury, or not sufficient evidence upon which to base a conviction.

4. SAME.

If the record fails to show either that there was no evidence whatever, or that the evidence did not, as matter of law, come up to the standard which the law requires in quantity and quality to warrant a conviction, the denial of such a request is legal error, and the court of appeals has the power, when such a decision is challenged by exception, to do what the trial court should have done.

5. SAME—EXCEPTIONS.

The same strictness with respect to exceptions does not prevail in criminal as in civil cases, but the court will look at the substance rather than at the form, with a view to promote justice.

6. SAME—DIRECTION TO ACQUIT

A motion in form to discharge the defendant or dismiss the indictment may be regarded as in substance a request to direct an acquittal, or that the court instruct the jury, as matter of law, that the prisoner could not be convicted.

7. SAME—SUBMISSION TO JURY.

So long as the burden is upon the people of not only removing the presumption of innocence, but of establishing the guilt of the accused beyond a reasonable doubt, a mere scintilla or even some proof is not sufficient to warrant the submission of the case to the jury.

8. SAME.

Whenever a criminal charge is submitted to the jury upon such proof against the objection and exception of the defendant, a question of law is presented.

VOL. XII—49

9. EVIDENCE—CRIMINAL LAW—STATEMENT OF ACCUSED.

> The people cannot put into the case a written statement of the facts by the accused, wholly in his own favor, without being in some measure, at least, bound thereby.

APPEAL by husband from judgment convicting him of murder in the second degree, and by wife from judgment convicting her of murder in the third degree.

Henry W. Hill, for appellants.

James L. Quackenbush, for the people.

O'BRIEN, J.—The defendants, husband and wife, were con victed in the superior court of Buffalo, the husband of murder in the second degree, and the wife of murder in the third degree, as shown by the verdict of the jury when first delivered in open court. The verdict also contained a recommendation for mercy in favor of the wife. The court then informed the jury that there was no such crime as murder in the third degree, and explained to them the various degrees of murder and manslaughter, and directed the clerk to receive the verdict as to the husband, and the jury to re- tire and reconsider their verdict with respect to the wife. The jury retired, and, again coming into court, found a verdict of guilty against the wife of manslaughter in the first degree, with a recom- mendation for mercy. Sentence was pronounced against the hus- band of imprisonment in the state prison for life, and the wife for 10 years. On appeal to the general term of the court in which the conviction was had, two judges only held the court; and one wrote for affirming, and the other for reversing, the judgment. This disagreement resulted in affirming the judgment, under the statute regulating appeals in that court.

In order to obtain a clear view of the merits of the judgment and the questions presented by the record, if any, a brief history of the case becomes necessary. On the morning of the 11th of September, 1890, the dead body of George Borowiec, a native of Poland, was found in the water-closet of the tenement house in which he lived, in Buffalo, suspended by the neck with a rope from the crosspiece over the vault. The coroner immediately instituted an inquiry as to the cause and circumstances of the

death and it was found that he had committed suicide. On the 7th of April, 1891, the defendant Joseph Ledwon married the widow of the deceased, and she is now the defendant Annie Ledwon. Nothing further in regard to the matter seems to have transpired till about four years after the death, when an indictment was found against the defendants, charging them with the murder of the deceased by violence, and as the result of their joint act. In January, 1895, the indictment was brought to trial, with the result already indicated. The deceased was a man well advanced in years, who lived with his wife in apartments, and it seems that they kept several boarders, of whom the defendant Joseph Ledwon was one. They had two children, and possibly more, the eldest of whom was a boy then less than eight years of age. This boy, at the time of trial, was about twelve, and, as we shall presently see, he fills an important place in this record. It was the theory of the prosecution that the deceased did not commit suicide, but that the defendants, who had then become somewhat intimate with each other, conspired together to murder him, and thus remove an obstacle to their future union; that they did, in fact, put him to death by violence, acting together, and aided, it would seem, by at least one other person; that the true cause of the death was strangulation or some other form of violence, perpetrated with a felonious intent, with deliberation and premeditation by the defendants; that, having thus killed the deceased, the defendants, in order to conceal the crime, hung up the body after death in the water-closet, in order to make it appear that the deceased had committed suicide. While the precise theory of the district attorney is not very clearly outlined by the evidence in the record as to all who took part in the supposed tragedy, and it is not very intelligible in many other important particulars, yet it has been here sufficiently stated for all the purposes of this appeal.

We think that it is entirely clear from a perusal of the record that the defendants should not have been convicted upon the evidence, and that the court should not have submitted the case to the jury. There is, of course, a manifest incongruity in the verdict, since, if the theory of the prosecution was established, the defendants were guilty of murder in the first degree, if of any crime whatever. There is nothing in the case to suggest any possible

theory upon which there could be a conviction of murder in the second degree, much less one for manslaughter in the first degree. The promptness with which the jury changed a verdict of murder in the third degree into one for manslaughter in the first degree suggests to the mind that the mental process directing such a result must have been based upon conjecture rather than proof. The only difficulty that we have with respect to this case grows out of the condition of the record and the power of the court to review the judgment in such cases. The judgment not being one of death, our jurisdiction is confined to questions of law. We have no power to review the facts, and questions of law can ordinarily be raised by exceptions only. This is not a new rule, but one that has existed always. Assuming that the defendants were improperly convicted, I do not think that we are compelled to affirm the judgment on any echnical questions of practice. The record shows that the proceedings at the trial are lacking in precision, but enough was done to present the question to the trial court, and now to this court.

At the close of the case for the people, and again at the close of the whole case, counsel for defendants requested the court to dismiss the indictment, on the grounds (1) that the people had failed to make out a case; (2) they have failed to show that any crime has been committed; (3) they have failed to connect the defendants with the commission of any offense. The court replied that, if there was any evidence at all in such a case, it must be disposed of by the jury, and stated that he would deny the motion, and submit the case to the jury. To this ruling an exception was taken. After the verdict, the counsel moved for a new trial, under section 465 of the Code of Criminal Procedure, on the ground that the verdict was contrary to the law and the evidence, which was denied, and exception taken. Subsequently, a motion for a new trial, on the ground of newly-discovered evidence, was made and denied. It is made the duty of the court, where it deems the evidence insufficient to warrant a conviction, to advise the jury to acquit (section 410), and the jury must then obey the advice. The court may undoubtedly do this of its own motion, and the accused may present to the court his right to an acquittal, as matter of law, under this section. But the defendant is not confined to

this formula or to any form of words in presenting to the court the question of his right to be acquitted. All that is necessary is that in some intelligible form there shall be presented to the court, for its ruling and decision, the question that there is no evidence for jury, or not sufficient evidence upon which to base a conviction. If the record in this court shows either that there was no evidence whatever, or that the evidence did not, as matter of law, come up to the standard which the law requires in quantity and quality to warrant a conviction, the denial of such a request is legal error, and this court has the power, when such a decision is challenged by exception, to do what the trial court should have done. The same strictness with respect to exceptions does not prevail in criminal as in civil cases, but the court will look at the substance rather than the form, with a view to promote justice. A motion in form to discharge the defendant or dismiss the indictment may be regarded as in substance a request to direct an acquittal, or that the court instructed the jury, as matter of law, that the prisoner could not be convicted. There can be no doubt in this case that such was the substance of the request made, or that it was so understood and treated by the court, and, when the evidence will not warrant a conviction, the denial of such a request is an error of law. People v. Bennett, 49 N. Y. 137. In a criminal case the denial of such a request upon the ground that there is some evidence, or whenever there is any evidence, may present a question of law. In a civil case a question of law can be raised in this court only when the finding of verdict has no evidence to sustain it, and the question has been raised by exception. But that, I think, is not true in a criminal case. A party cannot be convicted of murder or any other grade of homicide whenever there is merely some evidence or any evidence to sustain the charge ; and the court, upon the trial of such cases, may be called upon to decide, as matter of law, whether the evidence is of such a character or quality as to warrant a conviction. If this were not the rule, the jury would in all cases be the sole judge of the question, and there would be no remedy in this court against convictions clearly based upon insufficient evidence. Many of the common-law rules of evidence governing criminal trials have been enacted in the Code of Criminal Procedure, and the most im-

portant one is that contained in section 389, which declares that in all cases the defendant must be presumed to be innocent until the contrary is proved; and, in case there is a reasonable doubt whether the guilt is satisfactorily shown, he is entitled to an acquittal.   When this legal presumption of innocence is rebutted, or when guilt is shown beyond a reasonable doubt, must, of course, in some cases at least, be a question of law.   The statute has established a standard of proof in criminal cases, and the proof must conform to that standard before there can be a lawful conviction. Whenever it is clear that it falls below the prescribed standard, the accused is entitled, as matter of law, to an acquittal.   It is quite true that in many and perhaps in most cases where there is a conflict as to the facts, or the proof is open to opposing inferences, the question whether, on the whole, it is of such a character as to satisfy the statute, is for the jury; but it is obvious that there must, in practice, be some cases where the court will be bound to interpose and decide the question as one of law, and we think this is such a case.   So long as the burden is upon the people of not only removing the presumption of innocence, but of establishing the guilt of the accused beyond a reasonable doubt, a mere scintilla or even some proof is not sufficient to warrant the submission of the case to the jury.   People v. Owens, 148 N. Y. 648, 43 N. E. 71.

It follows that whenever a criminal charge is submitted to the jury upon such proof, against the objection and exception of the defendant, a question of law is presented.   We think that in this case it must be held, as matter of law, that the proof was of that character, and fell so far below the standard prescribed by the statute, that the case should have been withdrawn from the jury. This renders it necessary to refer in a general way to the proof upon which the defendants were convicted.   It should be observed at the outset that the witnesses who had any opportunity at all to know anything about what took place at the house of the deceased on the night of the death were Poles, speaking that language to the court and jury, through the medium of an interpreter.   As a result, their testimony is singularly defective in form and consistency.   There is nothing in it, however, which is inconsistent with the innocence of the defendants.   There was no

direct proof of any criminal agency on the part of the accused in producing the death excepting what is hereafter stated. There were a few slight circumstances tending to show that, on the night in question, noise or loud talking, or, as some of the witnesses express it, groans and other exclamations, were heard in the apartments of the deceased; but, from the character of the place and the habits of the inmates, this was not an infrequent occurrence, and had little or no significance. There was absolutely no proof on the part of the people that the body, when examined, had upon it any of the marks or indications that the hanging was after death by violence, which science could have detected, if such was the fact. Whatever proof of that character there was came from the defense, and, so far as it had any weight at all, was against the theory of the people. There is, indeed, some proof in the case which might furnish a motive on the part of the defendants to take the life of the deceased, and that is that the relations of the defendants were such as should not exist between the wife of the deceased and an inmate of the house, boarding or living in some way with the deceased and his wife. There were many other persons in the house, either as boarders or tenants, who had equal opportunities to commit the crime, if one was committed; but it is said that they had no motive, while the defendants had. The proof on this point is, at best, very slight. There was nothing to show that they cohabited together, or that any lewed relations existed between them. The standard of propriety that existed among these people was not high, and their habits of life were peculiar and exceptional, indicating a somewhat low state of civilization. The conduct of such people in the familiar intercourse of life is not to be judge by the rules that prevail among people of a higher order of refinement. The freedom of intercourse that prevailed among them, the drinking, carousing, and singing in the night, if practiced in other communities, would doubtless indicate marital infidelity, but in a neighborhood peopled with foreign laborers it may be largely due to custom, and to ignorance of what we might call the refinements and proprieties of life; and yet there can be no doubt that this evidence, weak and inconclusive as it was, gave an unfavorable color to the case in the minds of the court and jury. The marriage of the parties so soon after the death

may have given weight and force to suspicions that otherwise would have no secure foundation upon which to rest. But the existence of a motive is of little or no importance in a case where there is no proof of the commission of a crime. When circumstances point to guilt, a motive to commit the crime may turn the scale against the accused. Motive alone can never prove guilt, though it may strengthen circumstantial proof of guilt derived from other sources.

It is quite unnecessary to consider at greater length what is called the circumstantial proof in the case, since the learned trial judge told the jury, in substance, that it was wholly insufficient without the direct proof in the case, which was given by the young boy, the son of the deceased, and the defendant Annie. In this he was clearly correct, and it remains only to take a glance at the testimony of this boy, which certainly constitutes the most remarkable feature of the case. He was evidently a weak, ignorant boy, brought up under very unfavorable surroundings, thinking in and speaking a foreign tongue, and at the age of twelve, as to things that transpired more than four years before. He was called by the people, and on his direct examination swore positively that he was in the house on the night of his father's death, which was caused by his own act in hanging himself. That he was in fact at home that night, and had the opportunity to know whereof he spoke, there is no doubt. He was then asked if upon the trial of another person for the homicide, which, it seems, was had some time before, he did not testify that his father was strangled or choked to death by the defendants, and if he did not also give like testimony before the grand jury when the indictment in this case was found. He admitted that he did so testify, but on both occasions it was false, and that the truth was that his father hung himself. The district attorney continued the examination, and at last, by means of questions which the boy subsequently stated he understood as threats, the witness testified that he saw the defendants and the other persons referred to, on the night of the death, choking and strangling his father, and that what he had before testified to on this trial was not true. On the cross-examination by the defense, the witness withdrew all he had just said implicating the defendants, and again testified that the truth was that

his father committed suicide, and substantially that all he had said implicating the defendants was untrue. Here the people rested the case, and the defense proceeded to give evidence. It was shown by proof which is not contradicted that the deceased was addicted to intoxication; that, on the night of his death, he, with several others, were together, drinking beer in large quantities; that he had repeatedly threatened to commit suicide, and on one occasion, at least, attempted to execute the threat at a railroad crossing. At this stage of the trial the district attorney interrupted the defense, and stated to the court that he had been engaged in conversation with the boy, who spoke English sufficiently well to make himself understood, and that he now desired to change his testimony, and asked permission to recall him. The request was granted, under defendants' objection and exception. The witness then, under a line of questions quite leading and suggestive, did change his version of the transaction, and gave evidence tending to sustain the people's case. On cross-examination, however, these statements were again withdrawn, and his original testimony again replaced. This ended the examination of the boy, and the defense proceeded with the case. The defendant Annie was sworn as a witness, and she denied all participation by the defendants in the death, and gave proof tending to show that her former husband had committed suicide, and the proceedings and findings at the coroner's inquest were offered and received. The learned judge told the jury that the testimony of the boy, which was the only direct proof in the case, was involved in "hopeless contradictions," as it certainly was, but left it to them to find whether, on the whole, what he had testified to, implicating the defendants, was worthy of belief or not.

It should also be added that, upon the motion for a new trial on the ground of newly-discovered evidence, the learned trial judge reviewed the whole case in an elaborate opinion, in which it is said that he had great hesitation in submitting the testimony of the boy to the jury. This condition of mind is suggestive of reasonable doubt as to the truth of his story, so far as it tended to connect the defendants with the homicide. The prosecution gave in evidence two papers, each signed by one of the defendants in the presence of several witnesses, which were statements made by them

to a police officer at the time of the arrest. It is difficult to understand for what purpose these papers were put into the case. They are quite clear and circumstantial in the statement of facts tending to show that the defendants had no guilty agency in the death, and also equally clear in support of the theory that it was the result of suicide. While it is true that the statements of the accused in any form in their own favor cannot conclude the people, yet, when they are not in any way discredited, they must be regarded as some proof, at least, of the facts which they contain. I am not aware of any principle of law that would permit the people to put into the case a written statement of the facts by the accused, wholly in his own favor, without being in some measure, at least, bound thereby. Hence the crucial question is whether, as matter of law, the legal presumption of innocence has been or ever can be removed by such proof and guilt established beyond a reasonable doubt. Can a jury be permitted to convict of murder on such proof? Does it come up to the standard prescribed by the statute? We think not. Guilt in such a case cannot be established beyond a reasonable doubt by the testimony of such a witness, who is evidently, either from moral or mental defects, irresponsible. The maxim, "Falsis in uno, falsis in omnibus," must still be given some force as a legal principle. Whatever qualifications may have been attached to it in modern times, we think this is a case for its practical application. To hold that this verdict and judgment, based, as they are, upon testimony conceded to be involved in "hopeless contradictions," are beyond review in this court, would be a reproach to the administration of justice. The defendants were, under the plain provisions of the statute, entitled to have the jury directed by the court to acquit. The request was made in substance, and the refusal of the court to grant it was error. The judgment of conviction should be reversed, and a new trial granted.

GRAY, J., dissents upon the grounds—First, that the motion was to dismiss the indictment, and we have but recently held that the court had no authority to give such a direction (People v. Schooley, 149 N. Y. 99, 43 N. E. 536); and, second, because, if we concede that this motion to dismiss the indictment might be

liberally regarded as the equivalent of a motion to direct an acquittal, nevertheless the case presented a question of fact upon the evidence, and, however unsatisfactory that evidence may be, it cannot be said as matter of law that proof was lacking of the elements necessary to constitute the crime charged. I thing that it is only legal error to refuse to direct an acquittal in a case of defective proof, and, as was said in People v. Bennett, 49 N. Y. 137, "it is not the province of the court to take the case from the consideration of the jnry, although it may be of the opinion that it is not sufficient to convict." Our duty in such a case as this is altogether other than when the judgment appealed from is one of death.

All concur with O'BRIEN, J.. for reversal, except GRAY, J., who reads memorandum of dissent.

Judgment reversed.

NOTE.—The Exceptions in criminal cases. §§ 527, 528 of Crim. Code.

GENERAL TERM.—The general term may order a new trial independent of the exceptions, if it is satisfied that the verdict is against the evidence or against law, or that justice requires a new trial. People v. Petmecky, 2 N. Y. Cr. 453.

A conviction will be set aside and a new trial granted for a misdirection of the trial judge, which probably had weight with the jury in their decision, though an exception has not been taken by defendant to such misdirection. People v. Sweeney, 4 N. Y. Cr. 286.

Under section 527 of Crim. Code, an exception is not indispensably necessary if the evidence can be seen to be of any material detriment to the defendant. People v. Meyers, 5 N. Y. Cr. 124 ; 7 S. R. 221.

It is the duty of the general term. under this section, to look into the proceedings upon the trial in order to discover whether any error has occurred, and, if such error is found, to award a new trial whether any proper exception was, or was not, taken in the court below. People v. Williams, 29 Hun, 520 ; 1 N. Y. Cr. 336 ; 17 W. D. 356.

This section allows the general term to order a new trial, if, in any aspect of the case, error was committed in the progress of the trial. The narrow and technical rules in respect to the exactitude of exceptions were abrogated as to this class of cases. People v. Druse, 5 N. Y. Cr. 15 ; People v. Williams, 29 Hun, 525 ; 1 N. Y. Cr. 336 ; People v. McGloin, 91 N. Y. 249 ; 1 N. Y. Cr. 154.

Where the appellate court can see that the defendant has been prejudiced by any intemperate language of the prosecuting attorney, either on the trial or in his argument to the jury, it has power, under this and the following section, to grant a new trial. People v. Greenwall, 115 N. Y. 527 ; 7 N. Y. Cr. 314 ;