(69 App. Div. 217.)

### PEOPLE v. DESCHESSERE.

(Supreme Court, Appellate Division, First Department. February 14, 1902.)

1. SODOMY—EVIDENCE—SUFFICIENCY.

 Where the only witness to connect defendant with the crime of sodomy is an imbecile boy, 17 years old, who would have been an accomplice if of sound mind, and who testifies that his father told him what to swear to, but states on further examination that his story is not true, the evidence is insufficient to sustain a conviction, as the witness, if possessed of sufficient mind to authorize the reception of his testimony, is an accomplice whose uncorroborated testimony is insufficient to sustain a conviction under Code Cr. Proc. § 399, which is applicable

to the crime, and, if not possessed of sufficient mind to understand the nature of the crime or the bearing of his testimony, the witness is incompetent.

2. SAME—TRIAL—INSTRUCTIONS.
    Where the evidence of the boy is admitted, a requested instruction that he is an accomplice, and his uncorroborated testimony insufficient, under Pen. Code, § 303, to authorize a conviction, though incomplete in failing to call attention to the fact that the boy might have had a mind so weak as to not understand what he was doing, which would prevent him from being an accomplice, but still be possessed of a limited understanding, so as to make him a competent witness,—thus raising a jury question, whether he was an accomplice,—is sufficient to require the court to protect the defendant, by proper instructions, from conviction on the testimony of the boy if he is incompetent or if he is an accomplice.

Appeal from court of general sessions, New York county.

Francesco Deschessere was convicted of sodomy, and he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

Joseph H. Radigan, for appellant.
Howard S. Gans, for the People.

O'BRIEN, J.   The nature of the crime charged forbids our dwelling upon the facts, and it is only necessary to refer to them so far as to point out—and that but briefly—the reasons for which we think the judgment should be reversed.

The people claim to have proved that the defendant committed the act of which he is accused with one Louis Astorita, a youth 17 years of age, who, it appears, was an imbecile or person of weak intellect, or, as his father characterized him, "crazy." This youth was the principal witness, and although he said that his father had told him what to say in the police court (which, substantially, was what he testified to on the trial), when first interrogated, when further questioned by the counsel for the defendant, he said that he had made mistakes about it, and that the story he told was not true. The unreliability of his testimony was thereafter emphasized, for the learned trial judge took him in hand, and, after calling his attention to the contradictions which he had made, gave him an opportunity to explain them; but he again repeated that the statement that the defendant was the guilty party was not true, and then reasserted that his father told him to tell the story which he had told. It shocks one's sense of justice that a person should be convicted, and should serve a long term in prison, upon testimony so unreliable, inconsistent, and contradictory. The weight to be given such testimony was commented upon in People v. Ledwon, 153 N. Y. 10, 46 N. E. 1046, wherein the principal witness was a weak, ignorant boy, who spoke in a foreign tongue, and who upon the trial had stated that on a former occasion he had given false testimony; and it was said, "Guilt in such a case cannot be established beyond a reasonable doubt by the testimony of such a witness, who is evidently, either from moral or mental defects, irresponsible;" and the judgment of conviction, for that reason, was reversed. Although in the case at bar the youth

spoke the English language,—having been born in this country,—it was made evident that if not an imbecile, or, as his father said, "crazy," he was morally and mentally irresponsible, and that upon his testimony, uncorroborated as it was upon the question of the identity of the person who committed the crime, a conviction should not be allowed to stand. If, however, we regard him as sufficiently sound mentally to entitle his testimony to be credited at all, and as sufficiently intelligent to understand the nature of the crime, then he was an accomplice, whose uncorroborated testimony was not enough to justify a conviction. See section 399, Code Cr. Proc. The respondent contends that:

"The Code contains no specific provision that a conviction under section 303, Pen. Code, cannot be obtained upon the unsupported evidence of the person upon whose body the act of sodomy has been consummated; and in view of the fact that such specific provision is made with regard to the crimes of abduction, compulsory marriage, rape, and defilement (section 283, Pen. Code), it may well be doubted whether in any case under section 303 corroboration is necessary."

In the absence, however, of such specific provision, the court should follow the general provisions which have been enacted, and legal precedents. As pointed out by the defendant, section 399 of the Code of Criminal Procedure requires that:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

And it has been expressly held in Reg. v. Jellyman, 8 Car. & P. 604, 34 E. C. L. 916, that:

"Although consent or nonconsent is not material to the offense, yet as the wife, if she consented, would be an accomplice, she would require confirmation; and so it would be with a party consenting to an offense of this kind, whether man or woman."

The learned trial judge was asked to charge that, under section 303 of the Penal Code, the complaining witness is an accomplice, and that, as such, no conviction should be had upon his testimony unless it was corroborated by other evidence tending to connect the defendant with the commission of the crime, which requests were denied, and the defendant excepted. Upon these requests, we think the dilemma was presented either that the complaining witness was so deficient in intelligence as not to understand the nature of the crime or the bearing of his testimony, in which case he was not such a competent witness that, upon his testimony alone, the conviction should stand, or else that he was mentally competent, in which event, understanding the nature of the crime, he was capable of consenting, and thus became an accomplice, which required that, to sustain a conviction, his testimony should be corroborated. There is, of course, the additional phase that, without being entirely devoid of understanding, he may have been of a mind so weak that he did not comprehend what he was doing, and therefore did not consent; but that would present a question of fact, as to whether or not the act was voluntary on his part, which would have required the submission to the jury of the question whether or not he was an accomplice,

and the further instruction that, if the jury found that he was, then corroboration of his testimony was necessary. It is true that a request in form embodying this last phase was not made; but the attention of the court was distinctly called to the point that as the youth was allowed to testify, and the prosecution rested mainly upon his uncorroborated testimony, and he was thus treated as one who had sufficient understanding to know the nature of the act when it was consummated, it was important that the defendant's rights, vitally affected as they were by the testimony of such a witness, should have been guarded by the court.

We do not overlook certain of the other testimony in the case bearing upon the possibility or probability that the defendant was the guilty person; but upon the question of the identity of the criminal we have only the words of this half-witted youth, who in one breath says that it was the defendant, and in the next withdraws this statement and says that he had told an untruth when he said that it was the defendant, thus preventing any reliance being placed upon his testimony.

Upon the whole case we do not think that the defendant's guilt can, upon the testimony, be said to be established beyond a reasonable doubt, and therefore, as said in the case to which we have already referred, of People v. Ledwon, supra, the defendant was, "under the plain provisions of the statute, entitled to have the jury directed by the court to acquit."

The judgment, accordingly, should be reversed, and a new trial ordered. All concur.