COUNTY COURT—SPECIAL TERM—NASSAU COUNTY,

February, 1914.

## THE PEOPLE v. AUGUSTUS S. SMITH.

(84 Misc. 348.)

GENERAL BUSINESS LAW, § 384—DELIVERY OF COAL WITHOUT TICKET—
EVIDENCE—INSTRUCTION TO JURY.

Where, upon a charge of violating section 384 of the General Business Law, by delivering coal without a delivery ticket and duplicate thereof, having on each in ink or other indelible substance distinctly expressed in pounds the quantity of coal contained in the cart or wagon used in such delivery, with the name of the purchaser and of the dealer from whom purchased, defendant, who did not take the witness stand, was convicted upon testimony insufficient to overcome the presumption of innocence and to connect him with the delivery of the coal, a statement of the prosecuting attorney, that defendant had the right to testify that the tickets put in evidence and which did not comply with the statute were not his, was prejudicial error which was not rendered harmless by an instruction to the jury to disregard it.

In the circumstances the court should have instructed the jury in express terms that defendant was not obliged to take the stand as a witness and that his failure so to do created no presumption against him; in this way only could the error be cured.

APPEAL from a judgment of conviction of a misdemeanor rendered by a police justice.

*Harry G. Clock*, for appellant.

*Charles R. Weeks*, assistant district attorney, for people.

Niemann, J.

Appeal from a judgment of conviction of a misdemeanor, rendered by the police justice of the village of Freeport, upon the verdict of a jury.

The defendant was charged with a violation of section 384 of article 25-a of the General Business Law (Laws of 1911, chap. 825), which provides as follows: "No person, firm or corporation delivering coal, coke or charcoal shall deliver or cause to be delivered any quantity or quantities of coal, coke or charcoal, without each such delivery being accompanied by a delivery ticket, and a duplicate thereof, on each of which shall be in ink, or other indelible substance, distinctly expressed in pounds the quantity or quantities of coal, coke or charcoal contained in the cart or wagon or other vehicle used in such delivery, with the name of the purchaser thereof and the name of the dealer from whom purchased. One of such tickets shall be delivered to the purchaser specified thereon, and the other of such tickets shall be retained by the seller."

It is further provided in said act, by section 389, that a violator thereof shall be guilty of a misdemeanor, and shall upon conviction be liable to a fine of not over $50 for the first offense, and not over $100 or two months' imprisonment, or both, for the second offense and each subsequent offense.

The defendant entered a plea of not guilty and demanded a trial by jury. The case was tried before said police justice and a jury, on the 22d day of September, 1913, and resulted in a verdict of guilty. Sentence was suspended, and the defendant took this appeal from said conviction.

Upon the trial, Frank A. Wood, sealer of weights and measures for the county of Nassau, testified that on the 25th day of August, 1913, he followed a load of coal to the place of E. R. Collard, on the southwest corner of Wallace street and Lena avenue in the village of Freeport; that he went to

the driver of the wagon and asked for the delivery tickets, and that said driver handed him the tickets, which were received in evidence, and which contained no statement in pounds of the quantity of coal contained in said wagon used in the delivery thereof; that the wagon had on it the name of "Verity, Baldwin;" that he next saw the wagon at Scott's dock at Freeport, N. Y., and saw the defendant at the time cleaning up; that this was an hour after the occurrence. The witness says that he had no particular talk with the defendant at that time; that the substance of what defendant said was that witness was persecuting him; that witness should let him alone; that he knew who was doing this, and if witness wanted "taffy with Mayer" that he would show Mayer and witness both before he got through; that what he had done he had done through the advice of his counsel, and that Jim Seaman would take care of it. There was no explanatory evidence of what those allusions or references meant. This witness testified further that "to the best of my knowledge, the wagon which I saw at the dock was the same one I saw up to Mr. Collard's;" that he wouldn't say whether the driver he saw at Collard's was there or not; that the wagon at Collard's was full of loose coal to the top of the body, but he could not say how much weight or measure, and that he saw a quarter of the load, about 900 to 1,000 pounds, unloaded by the young man who handed him the tickets.

The counsel for the prosecution then asked the witness whether he had asked the driver of the wagon by whom he was employed, but this question was, upon the defendant's objection, very properly excluded. The people then rested their case and no evidence was offered on behalf of the defendant. The defendant's counsel moved for a dismissal of the complaint and the discharge of the defendant, upon the ground that the defendant had not been sufficiently connected with the delivery,

which motion was denied and an exception taken by the defendant.

The defendant's counsel asked the court to charge: " I That there is no evidence in the case which connects the defendant with the driver of the wagon either as his agent or employee;

" 2. That there is no evidence in the case which shows that the defendant ever had or saw plaintiff's exhibits 1 and 2 (being the delivery tickets)," both of which requests were refused, and exceptions duly taken by defendant's counsel.

The evidence upon which the verdict of the jury was rendered is scarcely sufficient to overcome the presumption of innocence.

Section 389 of the Code of Criminal Procedure provides that " A defendant in a criminal action is presumed to be innocent, until the contrary be proved; and in case of reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal." Whenever the proof upon the trial of a criminal charge falls below the standard of rebutting the presumption of innocence, and of proving guilt beyond a reasonable doubt, it is the duty of the court to advise the jury to acquit the defendant, and the submission of such a case to the jury, against the objection of the defendant, constitutes legal error. People v. Ledwon, 153 N. Y. 10, 12 N. Y. Crim. 385; People v. Owens, 148 id. 648, 11 N. Y. Crim. 163; People v. Gluck, 188 id 167–170. The court should in a proper case direct an acquittal. People v. Bennett, 49 N. Y. 137; Sullivan v. People, 27 Hun, 37; People v. Livingston, id. 107; People v. Cronk, 40 App. Div. 206.

In view of the paucity of proof, it was important that the case should be submitted to the jury with more than usual care, so that no injustice would be done to the defendant by putting into the case any element that would lead the jury to

accept doubtful evidence of guilt as sufficient proof of guilt. We have already seen that the learned counsel for the prosecution attempted to supply the lack of evidence as to the employment of the driver by a hearsay statement of the driver to Frank A. Wood, the only witness for the people. The prosecution having failed to fasten upon the defendant the ownership of the wagon or responsibility for the tickets, the following took place, as shown by the record: " The attorney for the people said something about the *defendant having the* right to go on the witness stand and testify that the tickets put in evidence were not his. Jury instructed by the court to disregard such remarks. People except."

Article I, paragraph 6, of the Constitution of this state, provides: " No person * * * shall be compelled in any criminal case to be a witness against himself."

Section 10 of the Code of Criminal Procedure provides that no person can be compelled in a criminal action to be a witness against himself.

The constitutional and statutory provisions declaring that a person, whether a witness or defendant in a criminal case, need not incriminate himself, protects him from being compelled to disclose facts or circumstances that can be used against him as admissions tending to prove his connection with any criminal offense, or even the sources from, or the means by which evidence of its commission or his connection with it may be obtained. People ex rel. Taylor v. Forbes, 143 N. Y. 219. See, also, Matter of Dickinson, 58 How. Pr. 612; Matter of Attorney-General, 21 Misc. Rep. 109; People v. Lewis, 14 id. 264. In the case of People v. Lewis, *supra,* the court used the following language (p. 265): " The defendant, therefore, in his silence, is behind the shield of the Constitution, and enjoys absolute protection against every species of judicial compulsion as a witness to self-accusation of crime * * * ." and again,

in the case of People ex rel. Taylor v. Forbes, *supra*, the Court of Appeals, speaking through O'Brien, J., says (p. 227): "These constitutional and statutory provisions have long been regarded as safeguards of civil liberty, quite as sacred and important as the privileges of the writ of habeas corpus or any of the other fundamental guaranties for the protection of personal rights. When a proper case arises, they should be applied in a broad and liberal spirit in order to secure to the citizen that immunity from every species of self-accusation implied in the brief but comprehensive language in which they are expressed."

Section 393 of the Code of Criminal Procedure provides: "The defendant in all cases may testify as a witness in his own behalf, but his neglect or refusal to testify does not create any presumption against him." The courts have uniformly held that this provision must be strictly observed by the court and counsel for the people. In the case of Ruloff v. People, 45 N. Y. 213–222, the Court of Appeals held that upon a criminal trial neither the prosecuting officer nor the judge has the right to allude to the fact that a person has not availed himself of the statutory privilege of being a witness in his own behalf; and in the case of People v. Tice, 131 N. Y. 651, the Court of Appeals said: "The law, so far as it can, protects a defendant who omits to be sworn, from having that fact weigh against him."

The statutory declaration, that the fact that the defendant in a criminal case fails to testify in his own behalf does not create any presumption against him, may not be qualified by the court. People v. Fitzgerald, 156 N. Y. 253; People v. Ryan, 120 App. Div. 275.

In the case of People v. Valentine, 147 App. Div. 31–35, the court, speaking of this statutory provision, says: " * * * its practical meaning is that the court and jury must, so far as they can, determine his case without prejudice or inference

against him, founded upon his omission to testify. * * * Because of this danger of prejudice, a prosecuting officer should exercise scrupulous care not to arouse the same by commenting upon such failure." People v. Springer, 137 App. Div. 304.

When we consider the state of the proof when the case was submitted to the jury, it is quite evident that the statement that the defendant could deny the ownership of the delivery tickets led the jury to be satisfied with the meagre evidence of the defendant's connection with or responsibility for the illegal delivery of the coal. The defendant's failure to take the stand and to clear up the case, i. e., to show affirmatively that he was not concerned as principal in the transaction, had the effect of condemning him in the eyes of the jury. They construed his failure to testify as an admission of guilt, and so the suggestion that he testify as to the matter in dispute was highly prejudicial to him, and he was thereby in effect deprived of the protection of the statute. Code Crim. Pro., § 393.

The only question that remains to be discussed is whether the statement of counsel for the People was rendered harmless by the instruction of the learned court to the jury to disregard it. It does not appear by the record that the court did anything more than to tell the jury to disregard the statement. This was not sufficient to cure the prejudicial and harmful error of the statement. In the circumstances it was necessary that the court go further and instruct the jury in express terms that the defendant was not obliged to take the stand as a witness, and that his failure to do so did not create any presumption against him. That this is the only proper and sufficient way to cure an error of this kind when committed either by the prosecuting officer or the court is apparent from the following authorities: Ruloff v. People, 45 N. Y. 213; People v. Hayes, 140 id. 484–496; People v. Hoch, 150 id. 291; People

v. Prior, 164 id. 459, 15 N. Y. Crim. 194, 469, 470; People v. Valentine, 147 App. Div. 31, 36, 26 N. Y. Crim. 433.

I am of the opinion that for this prejudicial error, as well as upon the whole case, justice requires a reversal of the judgment appealed from, and it is accordingly so ordered.

Judgment of conviction reversed.