## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### October 3, 1919.

## THE PEOPLE v. MICHAEL CONNELLY.

(189 App. Div. 82.)

GRAND LARCENY—AIDING AND ABETTING THEFT—CIRCUMSTANTIAL EVIDENCE.
  Upon the prosecution of a defendant for the crime of grand larceny in the second degree, in aiding and abetting a theft, evidence examined and *held*, that a judgment of conviction based upon circumstantial evidence should be reversed and the defendant discharged.

APPEAL by the defendant, Michael Connelly, from a judgment of the County Court of Rockland county, rendered against him on the 2d day of July, 1918, convicting him of the crime of grand larceny in the second degree.

*Frank Comesky,* for the appellant.

*Morton Lexow, District Attorney,* for the respondent.

BLACKMAR, J.:

We regard the evidence as insufficient to sustain the verdict. The indictment was for stealing one pig of tin of the value of seventy-two dollars and thirty-two cents on the 4th day of July, 1917, at the village of Suffern, Rockland county. It was claimed that the crime consisted in aiding and abetting the theft of the tin by Edward Veech, and the conviction rested on circumstantial evidence. The jury seemed loath to render the verdict and asked if they could not find the defendant guilty of a lesser degree of the crime than that charged in the indictment. The court instructed them to the contrary; and in response to their request as to the punishment, whether fine or

imprisonment, they were told by the court that they were not concerned with the punishment but that if they recommended mercy he should consider it.    The jury thereupon found the defendant guilty as charged and recommended mercy.    The defendant was sentenced to state prison on an indeterminate sentence with a minimum of one year and eight months and a maximum of three years and four months.    The court on the same day certified that there was reasonable doubt whether the evidence as a whole proved the defendant guilty.

On the 3d of July, 1917, forty-one pigs of tin were stolen from a freight car on the Erie Railroad at Sloatsburg, N. Y. Roscoe C. Taylor, a detective in the employ of the railroad company, on investigation, discovered some of the tin hidden in the woods near the railroad track.    That night he watched the tin.    About 10 or 11 o'clock an automobile came from the east with the lights dimmed, and after turning stopped near where the tin was concealed.    Three men got out of it and began to load some objects into the car which they took from beneath a culvert.    Taylor drew his revolver, came upon the men and commanded them to throw up their hands.    The three men scattered and ran away.    He stopped the driver, Edward Veech, and together they recovered twelve bars, loaded them into the car, drove to a garage in Suffern and there left the car with the tin, Taylor giving instructions that it should not be moved without orders from him.    Veech, having satisfied him that he was the owner of the car, was permitted to return to his home in Passaic, N. J.    Taylor retained the car, which was a Paige touring car, as security for Veech's return.

On the following day Veech, who was a hackman living and doing business in Passaic, went to Benjamin F. Turner, the captain of the detective forces at Passaic, and asked Turner to help him secure possession of his car.    Turner directed John J. Howard, a police detective, to go with Veech, identify him to Taylor, secure the car and do what he could to aid in detecting the thieves.    Veech and Howard secured a Ford car

from Earl, the owner, who sent a young man, James Wentick, with them as a driver.   They picked up Farrell, a member of the police force, and the defendant, and the four went together in the car to Suffern.   Veech was to have driven the defendant and his family to the Delaware Water Gap on the fourth, and, having notified the defendant that he could not go, took the defendant with him to give bail if necessary.   The party stopped at the Ferncroft Inn and took with them some articles belonging to Farrell, which he had left there.

On arriving at Suffern they found that Taylor was not there. After dining, they located him at Sloatsburg, and Wentick, Farrell, Howard, defendant and a man named Dean went to Sloatsburg, arriving about 4 o'clock, and found Taylor. Howard told Taylor that the load of tin was too heavy for the Paige car and asked if he might remove it.   Taylor told him he could do so and that he had better take it to the Erie station. Taylor was asked to accompany them back, but declined, saying that he would go by train and reach there about 5 o'clock. The parties returned, went to the garage, and by Howard's direction took five bars of the tin from the Paige car and placed them in the Ford car, and both cars went to the station.   The Paige car was unloaded and defendant and Dean together unloaded the Ford car.   The defendant then told Wentick, who was in a hurry to return on account of an arranged Fourth of July excursion, that he might as well go back. Wentick cranked his car and started, asking Veech if he wanted the stuff in it, and Veech said "no."   It appears that there was a bar of tin left in the Ford car, and Wentick, alone in the car, took it back to Passaic with him.

When Taylor appeared on the scene at Suffern he counted the bars of tin and found two missing.   One was found by Farrell under the seat of the Paige car.   At that time the Ford car had left and it was suggested that the missing bar might have gone back to Passaic in it, and Howard said that if it had he would get it.   The parties then went before a justice

of the peace, where a charge was for the first time made against Veech. Bail was fixed at $100 and defendant furnished cash bail. The nature of the charge is not disclosed by the evidence.

When Wentick, driving the Ford car, reached Passaic, he went to the barn where the car was kept, took out the bar of tin and the articles put in the car at the Ferncroft Inn, and placed them in a closet. He then went on a call, telling the owner, Earl, that there was some stuff brought back in the car which he had left in the barn, and started with his cousin on the projected Fourth of July excursion.

The Paige car, with Veech, Howard, Farrell and defendant, left Suffern after bail had been given for Veech, and, being delayed by engine trouble on the road, reached Passaic late at night. Howard and Farrell were dropped. Veech went to see Earl, and asked him if Wentick had brought anything home in his car. Earl informed him that Wentick had left some stuff in the barn, and, accompanied by defendant, Veech went to Wentick's barn, where Veech took the bar of tin and placed it in his car. On the way home his engine stopped and defendant left him with his car on the street. He sent to the railroad station for assistance and several hackmen came out to help him. He showed them the bar of tin and told them he was in trouble over it. They failed in remedying the engine trouble in the car and pushed it along until they came in front of Veech's house, where two of the men took the bar of tin and threw it over the fence into Veech's yard. The next day Turner, Howard and Nolan, a detective from the Erie Railroad, came to defendant's place and asked him if he knew where the slab of tin was. He said that he did not. Being pressed, he told them to go and see Veech, who was working on his car on the opposite side of the street. They went to Veech, who at first said he did not know where the tin was, and together they went to his premises, where Veech pointed it out near the fence on a pile of rubbish. Whether or not it was concealed is in dispute between two of the people's witnesses.

Veech and the defendant were then placed under arrest. The defendant is twenty-nine years of age, engaged in a regular business at Passaic and living there with his family in good repute.

A careful analysis of these facts discloses defendant's connection with the alleged theft on three points only. He, with a man named Dean, not called because he was in military service, unloaded the Ford car at Suffern, and he told Wentick that he could go back to Passaic. He was with Veech when Veech took the bar of tin from Wentick's barn, and on the next day he told the police officials that he did not know where the tin was but to go and see Veech. As two persons were concerned in unloading the Ford car at Suffern, it is as reasonable to infer that the bar was left by mistake, each thinking that the other had completed the unloading, as it is to infer a theft of a bar of tin eighteen and a half inches long, six wide and five and one-half high, weighing over 100 pounds, in the presence of a number of spectators, including two police officers, and certainly known to at least Wentick. As those concerned at Suffern when the tin was missed expressed the opinion that it went back to Passaic in the Ford car, it was natural for Veech to try to locate it and secure it, and defendant's presence under such circumstances does not permit an inference of guilty knowledge. He had nothing to do with the disposition of the tin after that; and when he told the police officials the next day that he did not know where it was, he spoke the truth, and performed his whole duty in referring them to Veech, in whose possession he had last seen it.

The district attorney's theory seems to be that defendant went with Veech to Suffern for the purpose of aiding him in stealing the tin. This is a remarkable theory. The tin had already been stolen, reclaimed, and was in the custody of a detective of the Erie road. Each block was a bulky and heavy object. Veech was then under suspicion, and, to reduce the matter to an absurdity, they took with them two police officials,

against whose character nothing can be said on this record, either to watch them steal the tin or, as hinted by the district attorney, to aid them in doing it.

We think the conviction a miscarriage of justice. It rests on " suspicion light as air." The evidence was as matter of law insufficient to exclude reasonable doubt, and as this is a matter for the court to decide (People v. Ledwon, 153 N. Y. 10; People v. Gluck, 188 id. 167), the judgment of conviction should be reversed and the defendant discharged.

JENKS, P. J., MILLS, RICH and PUTNAM, JJ., concurred.

Judgment of conviction of the County Court of Rockland county reversed, and defendant discharged.