THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM STROPE, Appellant.

County Court, Tioga County, May 24, 1934.

*Frederick E. Hawkes,* for the appellant.

*J. Laning Taylor, District Attorney,* for the respondent.

TURK, J. The defendant was charged by an information made on the 1st day of February, 1934, with having committed the crime of selling liquor at retail on the 1st day of February, 1934, at 405 Fulton street, in the village of Waverly, Tioga county, N. Y., at about six o'clock in the afternoon of that day, without obtaining a license therefor from the State Alcoholic Beverage Control Board, in violation of section 71 of the Alcoholic Beverage Control Law of the State of New York. In addition to the information there was deposition filed at the same time by a witness who swore that on that date and at that hour and place he purchased of the defendant one-half pint of alcohol and paid therefor the sum of twenty-five cents. The defendant claims that the magistrate erred in failing to dismiss the charge against the defendant on the ground that section 71 of the Alcoholic Beverage Control Law refers entirely to the sale of beer and that the crime of selling liquor does not come within that section. It is true that section 71 of the Alcoholic Beverage Control Law refers to beer, but subdivision 10 of section 132-a provides that all provisions of that chapter relative to beer, except as otherwise expressly provided, shall apply, so far as they may be or can be made applicable, to the control, regulation, manufacture, sale and distribution of liquors and wines.

A prosecution is commenced when an information is laid before a magistrate charging the commission of a crime. The information is an allegation made to a magistrate that a person has been guilty of some designated crime. (Code Crim. Proc. § 145.) An information performs the same function as an indictment in a court of record and must set forth the facts to establish a crime, but the exactness required in an indictment need not be present. All that is necessary is that the information should state the crime charged with such accuracy that the defendant may know the exact offense which it is claimed he has committed. (*People* v. *Olmsted,* 74 Hun, 323.) However awkwardly an information in a police court may be drawn, if it charges a crime known to the law and states acts done by the accused that constitute such a crime, it will be sufficient. (*People* v. *Pillion,* 78 Hun, 74.) The information in this case clearly informed the defendant as to the precise crime with which he was charged and no error was committed by the magistrate in refusing to dismiss the charge. The defendant also contends that

the magistrate erred in receiving certain other evidence in the case but I am unable to find any erroneous ruling made by the magistrate in the reception of evidence that in any way prejudiced the rights of the defendant. In fact, the defendant made very few objections to the conduct of the trial and apparently relied entirely upon an alibi which he hoped to establish. The defendant contends that after having heard the alibi testimony the court should have dismissed the charge against the defendant at the close of the case due to the fact that the principal witness for the People had been convicted of several offenses. The witness McCarthy testified that he had been convicted a number of times for public intoxication, once for petit larceny, and probably once for disorderly conduct, but the trial court could not find as a matter of law that because of these convictions for minor offenses the witness was unworthy of belief. "Criminals may tell the truth. If after weighing their story, in view of all of the circumstances and all corroboration, it seems credible, we need not reject it merely because their reputation is bad or their habits vicious. Such facts are but a warning that caution should be used. For it is also to be remembered that in fixing the blame for such a crime as we are here considering the state is not likely to discover witnesses of high character." (*People* v. *Cohen*, 223 N. Y. 406.) A jury may believe a witness of bad character in preference to one of good character if they feel the former has told the truth and the latter has not.

The case of *People* v. *Ledwon* (153 N. Y. 10), cited by the appellant, is readily distinguishable from the present case. The *Ledwon* case was a murder case, and the People relied almost entirely upon the evidence of a "weak, ignorant boy, thinking in and speaking a foreign tongue, at the age of twelve, as to things that transspired more than four years before." This boy when first examined by the district attorney swore positively that the deceased hanged himself. After cross-examination by the district attorney he testified that while he had testified before the grand jury that the deceased was murdered, that testimony was false. After further examination by the district attorney he finally testified that his previous answers had been false and that he had in fact seen the deceased murdered, but on cross-examination by counsel for the defendant he again denied this. The testimony of the witness McCarthy in the present case is not comparable in any respect to the witness in the *Ledwon* case. The witness McCarthy testified that on the first day of February he went to the home of the defendant and there purchased of the defendant a quantity of alcohol for which he paid the sum of twenty-five cents; that after making

the purchase he took the bottle to a police officer who was waiting nearby, and there is no dispute in this case that the exhibit produced was alcohol. On the trial the witness was asked: " Q. At any time after you received it did you taste it before you gave it to Dana? A. No, sir. Q. Didn't you taste this alcohol? A. Yes. Q. Where? A. Up in his room." It is claimed by the defendant that by this contradiction the witness McCarthy placed himself in the same class as the witness in the *Ledwon Case* (*supra*) but it seems to this court that the evidence of the witness McCarthy was given in a straightforward and convincing manner and that this seeming contradiction occurred solely by reason of his failure to properly understand the question which was asked of him.

From the testimony of the witness McCarthy, and of the police officer who accompanied him to a place near the home of the defendant, it is certain that if the liquor was purchased of the defendant it was purchased at a time about six o'clock in the afternoon, " not just six o'clock but near six o'clock," as the witness testified. The defendant took the witness stand in his own behalf and called three other witnesses whose testimony would indicate that on the afternoon in question the defendant was in Elmira from five o'clock to ten o'clock in the evening. Courts may take judicial notice of the division and location of counties and judicial notice is taken here that Elmira is in Chemung county and adjoins Tioga county on the west. Perhaps it is not stretching judicial power too far to observe that the distance between Elmira and Waverly is only about twenty miles. In considering alibi evidence it is important to know the distance between the scene of the crime and the place where the defendant claimed to have been, to allow for the difference in timepieces, the opinions respecting time, and the available means and celerity of travel. (Underhill Crim. Ev. [3d ed.] § 246.) In *People* v. *Kelly* (35 Hun, 295) Mr. Justice HAIGHT, writing about an alibi defense, said: " It is but natural that a person who has committed a crime should seek to get away from the scenes of his crime and to avoid detection. It is undoubtedly true that the defense is often resorted to, and at times attempted to be sustained by false and perjured testimony. The testimony given to establish the defense may or may not be suspicious, depending largely upon the circumstances and the character of the witnesses giving it. It is proper for the jury to scan with care the testimony given, for the purpose of determining whether it is true or false." The question, then, as to the reliability of the alibi witnesses and as to whether or not the defendant was at his residence at the time the witness McCarthy claimed to have purchased the liquor, was for the jury to determine. The claims of the People and

the defendant were presented to the jury in this case with force, the jury saw the witnesses and evidently considered the case with care. Better than a court which reviews but a printed record, were they fitted to pass upon the guilt or innocence of this defendant, and the responsibility for the result of this trial rests with the jury. Judgment of the lower court is affirmed.

Enter order accordingly.