OPINION OF THE COURT
Henry W. Lengyel, J.
The claim at bar was filed pursuant to the Unjust Conviction and Imprisonment Act of 1984 (L 1984, ch 1009) which became effective on December 21, 1984. That act broadened the waiver of immunity from liability created by Court of Claims §§ 8 and 8-a; and also amended Court of Claims Act § 9 (3-a).
In his memorandum of approval addressed to this enactment, Governor Cuomo stated: "Currently, the law does not provide a cause of action in the Court of Claims for a person who has been unjustly convicted and imprisoned for an act he did not commit. As a result, over the years the Legislature has passed several bills specially conferring jurisdiction on the *518 Court of Claims to hear individual cases. Such special legislation places the Legislature and the Governor in the position of ad hoc fact finding, often attempting to ascertain facts from the distant past.” (1984 McKinney’s Session Laws of NY, at 3669; see also, Zimmerman v State of New York, 116 Misc 2d 521; Butters v State of New York, 27 Misc 2d 105; Hoffner v State of New York, 207 Misc 1070; Campbell v State of New York, 186 Misc 586.) It was of interest to note that, in the 1983-1984 regular sessions of the Senate and Assembly, such special legislation had been prepared on behalf of Mary Reed. (See, Senate Bill 2530; Assembly Bill 3220.) It was favorably reported from the Assembly Judiciary Committee on May 29, 1985. However, in light of the Governor’s 1984 legislative program related to this general issue, the legislative efforts were discontinued.
In the first paragraph of section 8-b, the Legislature set forth a statement of intention and purpose which read as follows:
"§ 8-b. Claims for unjust conviction and imprisonment
"1. The legislature finds and declares that innocent persons who have been wrongfully convicted of crimes and subsequently imprisoned have been frustrated in seeking legal redress due to a variety of substantive and technical obstacles in the law and that such persons should have an available avenue of redress over and above the existing tort remedies to seek compensation for damages. The legislature intends by enactment of the provisions of this section that those innocent persons who can demonstrate by clear and convincing evidence that they were unjustly convicted and imprisoned be able to recover damages against the state. In light of the substantial burden of proof that must be carried by such persons, it is the intent of the legislature that the court, in exercising its discretion as permitted by law regarding the weight and admissibility of evidence submitted pursuant to this section, shall, in the interest of justice, give due consideration to difficulties of proof caused by the passage of time, the death or unavailability of witnesses, the destruction of evidence or other factors not caused by such persons or those acting on their behalf.”
The act provided that a person, who had been convicted and imprisoned for a crime which he or she did not commit, could present a claim for compensatory damages in this court. This claimant is required to establish by documentary evidence that she had been convicted of a felony or misdemeanor; that *519 she was sentenced to a term of imprisonment; and that part of all of that sentence had been served in the correctional system of this State. The claimant must also establish that her judgment of conviction was reversed or vacated and that the indictment was dismissed on one or more of the grounds set forth in CPL 440.10 (1) (a), (b), (c), (e) or (g); or where the dismissal was based on one of the stated CPL 440.10 grounds, upon CPL 470.20 (1); or where the count dismissed was the sole basis for the imprisonment, upon CPL 470.20 (2) or (3); or upon CPL 470.20 (5). Mary Reed has met these requirements. On February 3, 1972, she was indicted for "Murder” and for the "Possession of a Weapon * * * as a Felony.” She was tried in the Westchester County Court and was found guilty of "Manslaughter 1st Degree” and "Possession of a Weapon * * * as a Felony”; and, on May 7, 1973, she was sentenced to concurrently serve indeterminate terms of 15 years and 4 years, respectively. Her sentence was unanimously affirmed by the Appellate Division, Second Department, in 1974. (See, People v Reed, 45 AD2d 934.) She was paroled on or about October 14, 1975. Subsequent to parole, her conviction was unanimously reversed by the Court of Appeals and the indictment was dismissed on July 6, 1976. (See, People v Reed, 40 NY2d 204.) The dismissal of this accusatory instrument was obviously predicated upon CPL 470.20 (2) and (5), two of the grounds set forth in Court of Claims Act § 8-b (5) (b) (ii). As stated in CPL 470.40, when the Court of Appeals reverses an intermediate appellate court which had affirmed a criminal court judgment, sentence or order, the terms of CPL 470.20 apply to such corrective action.
Mary Reed served a portion of her sentence. In fact, she was in confinement in various county and State institutions from January 8, 1972 until her trial in April 1973. After conviction and sentencing she was in State correctional facilities until the October 1975 parole. Her claim was filed and served on or about August 19, 1985, well within the applicable two-year Statute of Limitations imposed by Court of Claims Act § 8-b (7).
In the moving papers defense counsel contended that the claim should be dismissed pursuant to CPLR 3211 (a) (2), (7) and (8) on the grounds that the claim was late filed; that the claim does not state a cause of action; that the court does not have jurisdiction over the subject matter; and that the court does not have jurisdiction over the defendant. Defense counsel attempted to support his position on page 2 of the opposing *520 affidavit. At best, defense counsel’s reasoning in this respect was specious and clearly without merit. It is rejected by this court. There is absolutely no question but that a section 8-b cause of action was stated in the claim at bar; and that such cause of action was properly established by documentary evidence.
Having made the above determinations, I must now, under Court of Claims Act § 8-b (4), determine whether the claim stated facts in sufficient detail to permit me to find that the claimant "is likely to succeed at trial” in proving by clear and convincing evidence that she did not commit any of the acts charged in the indictment or that the acts charged did not constitute a felony against the State; and that she did not by her own conduct cause or bring about her conviction. If I find, "after reading the claim that claimant is not likely to succeed at trial” (Court of Claims Act § 8-b [4]), I am required to dismiss the claim either sua sponte or on the motion of the State.
It is clear that Ms. Reed’s conduct did not cause or bring about her conviction. As stated in the Law Revision Commission study reported in 1984 McKinney’s Session Laws of NY, at 2932: "Examples of such misconduct would include falsely giving an uncoerced confession of guilt, removing evidence, attempting to induce a witness to give false testimony, attempting to suppress testimony or concealing the guilt of another. This requirement is necessary to ensure that one is not rewarded for his own misconduct.” (Cf. Greene v State of New York, Ct Cl, Oct. 9, 1985, claim No. 70831, motion No. M-33417, McCabe, J.)
In making my determination whether or not the claim prima facie has shown "that there exists a likelihood or a reasonable probability (cf. Tucker v Toia, 54 AD2d 322) that [claimant] will be successful in meeting [the] burden of establishing by clear and convincing evidence that [she] was unjustly convicted and imprisoned.” (Rivers v State of New York, 130 Misc 2d 544, 547.) I have considered the claim as filed; the Court of Appeals decision, which reversed the trial court’s conviction and its affirmance in the Appellate Division; and the documentary evidence appended to the motions at bar. In my opinion, Mary Reed has not only met her burden of prima facie showing that she was likely to succeed at trial; but she has also met her burden of showing, by clear and convincing evidence that she was innocent of the crime for which she was convicted and imprisoned; and I so find.
*521 As previously stated, Court of Claims Act § 8-b was, in great part developed by the Law Revision Commission. I will not attempt to discuss this report section by section. Suffice it to say it was a scholarly and reasoned study; and that "the linchpin of the Commission’s proposal is innocence.” (1984 McKinney’s Session Laws of NY, at 2930.) I certainly have no quarrel with the requirement that innocence must be the element which holds this cause of action together. However, the rub is, how must that innocence be proven?
The defense counsel would have me reconsider the "evidence” submitted at the 1973 trial, evidence which the Court of Appeals very apparently thought was as heavy as a charlotte russe, and thereby redetermine the guilt or innocence of this lady. This is exactly what the Commission did not think should occur in the assertion of a claim; and its reasoning in that respect would, in my opinion, apply equally as well to the defense of such a claim. The report stated: "Thus, permitting one to assert the proposed claim solely on the basis of a claim of innocence would be giving the convicted another opportunity to hash and rehash points that have already been determined after full deliberation and review. Concerns for the proper and orderly administration of the criminal justice system surely militate against such a position. Furthermore, adopting this position would in effect place the Court of Claims in a 'super’ appellate court role, reviewing possibly all criminal convictions and the appellate affirmances thereof. Needless to say such a role for the Court of Claims would be inappropriate” (id., at 2927). If the claimant should not be permitted to "hash and rehash” the facts submitted at trial, why should the defendant be permitted to "hash and rehash” those same facts, which the court of last resort in this State has held will not support a finding of guilt?
Although the study avers that "The proposed claim [act] is based upon principles of fundamental fairness” (id., at 2934), it recognized that the claimant has been placed in the very difficult position of proving a negative. The defense counsel characterized this as an extremely severe burden of proof. Obviously, the Legislature recognized the potential problem when it wrote, in the first paragraph of the statute, that the trial court in the civil matter shall give due consideration to difficulties of proof. The Court of Appeals opinion set forth the factual situation presented at the trial. It stated that "So long as the burden is upon the People of not only removing the presumption of innocence, but of establishing the guilt of the *522 accused beyond a reasonable doubt, a mere scintilla or even some proof is not sufficient to warrant the submission of the case to the jury (People v Ledwon, 153 NY 10, 18; People v Owens, 148 NY 648).” (People v Reed, 40 NY2d 204, 208, supra.) The court further stated: "The case before us is remarkably similar to Ledwon, for the credibility of the only witness able to testify as to an essential element of the crime and, thus, supply the only proof of that element, is questioned, here, not by the defense or the court, but by the prosecution itself. No other witness could be found to testify that Mary Reed was in the bar on that evening or that Mary Reed shot Banks, although there were others in the bar that night including Evelyn Crawford, the oif-duty barmaid, who played a part in Claretta Mitchell Booker’s narrative. No circumstantial proof, no fingerprints or proof of ownership of the weapon was presented to add credence to what in all other respects, we are told, is an unbelievable story” (p 209). What more clear and convincing proof must claimant present to support the burden that she did not commit the crimes charged? In fact, what more proof can she present other than to prove she wasn’t in the bar on the night of the killing; and, as she was "a genuine victim of amnesia * * * [with] 'a true lack of memory of the entire incident’ ” (supra, p 209), such would be difficult, if not impossible to prove. She certainly can’t be required to bring in the barmaid, Claretta Mitchell Booker, and try to elicit a confession of perjury; she certainly can’t be expected to produce the police captain to explain why, in handling the murder weapon, he "took no care to preserve possible fingerprints” (supra, p 206); she certainly cannot now be expected to produce witnesses to testify that she did not commit the crime when no such alibi witness was available to her in 1973; and, when even the police could not, in 1972-1973, find any witness other than the barmaid to state that Ms. Reed was actually in the bar.
The trial court refused to allow expert medical proof of amnesia unless Ms. Reed took the witness stand to establish what that court considered a proper foundation. Judge Cooke, writing for the unanimous court, stated "such trial error, of itself, would have required a reversal and new trial” (supra, p 210). However, the court did not follow such path. It obviously thought a case could not be made out; and, when it found that, as a matter of law, the prosecution failed to meet its burden of proof, it reversed the judgment of conviction and dismissed the indictment. In my opinion, the court subscribed *523 to the tenet that "When the proof is so thin that it will not support a featherweight, although dressed in 'prima facie’ semblance, the facts to be proved are impossible because they are impossible of belief.” (People v Santos, 38 NY2d 173, 176.)
As previously pointed out, the court stated in the Reed decision that "The case before us is remarkably similar to Ledwon” (supra, p 209). In People v Ledwon (153 NY 10, 22-23, supra) the majority wrote:
"Hence the crucial question is whether, as matter of law, the legal presumption of innocence has been or ever can be removed by such proof and guilt established beyond a reasonable doubt. Can a jury be permitted to convict of murder on such proof? Does it come up to the standard prescribed by the statute? We think not. Guilt in such a case cannot be established beyond a reasonable doubt by the testimony of such a witness, who is, evidently, either from moral or mental defects, irresponsible * * *
"To hold that this verdict and judgment, based as they are upon testimony conceded to be involved in 'hopeless contradictions,’ are beyond review in this court, would be a reproach to the administration of justice. The defendants were, under the plain provisions of the statute, entitled to have the jury directed by the court to acquit. The request was made in substance, and the refusal of the court to grant it was error.
"The judgment of conviction should be reversed and a new trial granted.”
If, in a criminal proceeding, the defendant is to be considered innocent until guilt is proved beyond a reasonable doubt, it would seem a fortiori that, if there was not sufficient proof to submit the case to a jury (People v Ledwon, supra) or to require a new trial (People v Reed, supra) that such defendant is and was innocent; and, when the claimant, who under Court of Claims Act § 8-b, must be considered guilty until innocence is proven by clear and convincing evidence, meets that standard in the criminal trial; and, whose reversal and dismissal comes within the statutorily required combination of CPL 440.10 (1) (a), (b), (c), (e) or (g) and/or CPL 470.20 (1), (2), (3) or (5), then that claimant has sustained her burden in the civil trial.
If this is not so, I doubt that any claimant could ever prove innocence by clear and convincing evidence except in the instance where another person confesses to the crime and such confession is accepted by the judicial authorities. Of *524 course, in such instances, the claimant would be pardoned by the executive as innocent and would not be faced by this impossibly heavy burden of proof. I cannot believe the Law Revision Commission, the Governor, the Attorney-General and the Legislature were so cynical as to propose, prepare, enact, support and sign into law an act that created a sisyphean right. For all of the reasons previously stated, I find that Mary Reed was innocent of crime and was unjustly convicted and imprisoned.
The State’s motion for dismissal is denied. The claimant’s cross motion for summary judgment on liability is granted, and the chief clerk is directed to enter an interlocutory judgment on liability in favor of the claimant.