OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be modified to reverse the conviction of Gregory Reed and dismiss the indictment as to him and, as so modified, should be affirmed.
As to the disqualification of the trial juror who had served on a Federal Grand Jury during the two years prior to trial of the present case, we agree with the Appellate Division, for the reasons set forth in the opinion of Justice Leon D. Lazer, that defendants Fred Foster and Gregory Reed waived the issue. Defendants argue that because the Judiciary Law speaks separately to qualifications (§ 510) and disqualifications (§ 511) and CPL 270.20 (1) provides that, “A challenge. for cause is an objection to a prospective juror and may be made only on the ground that: (a) He does not have the qualifications required by the judiciary law” (emphasis supplied), they could not have challenged the juror for cause and, therefore, were not required by CPL 270.20 (2) to join in the peremptory challenge to the juror in order to preserve the error. They point to the fact that *1146 the only statutory provision relating to discharge of disqualified jurors is Judiciary Law § 518, which provides that, “The court shall discharge a person from serving as a trial or a grand juror whenever it satisfactorily appears that he is not qualified or is disqualified” (emphasis supplied), and argue, first, that only the Trial Judge has the power to purge the panel of disqualified persons and, second, that the obligation of the Trial Judge being to discharge a disqualified person “whenever it satisfactorily appears that he is * * * disqualified,” how or by whom the disqualification comes to, or is brought to, the attention of the Trial Judge is irrelevant.
The argument has surface appeal but exalts form over substance. The qualifications of citizenship, age, residence, mental and physical ability, intelligence, character and ability to read and write English and speak English understandably go to the substance of a juror’s function, to listen, understand and deliberate, whereas the disqualifications — for service in the Armed Forces, as an elected or appointed government official, Federal or State Judge or as a juror within two years past — relate not to competence or ability to serve as a juror but to governmental policy: with respect to prior service, as Justice Lazer noted, to discourage professional jurors and render jury service more attractive by minimizing its burdens. Thus, despite the wording of CPL 270.20 (1), defendants should have, as did Jerry Foster, challenged the juror for cause because of his prior service. Whether they would have preserved the error, despite that failure, had they joined in Jerry Foster’s peremptory challenge to the juror and thereafter exhausted their peremptory challenges, we need not decide, for by refusing to join in that challenge they waived any objection based on the juror’s prior service (People v Cosmo, 205 NY 91,100-101; State v Strodes, 48 Ohio St 2d 113, 357 NE2d 375).
Both defendants argue also that the evidence was insufficient to sustain their respective convictions. In reviewing legal sufficiency we are required to view the evidence , in the light most favorable to the prosecution and decide whether a rational trier of fact could have found the elements of the crime proved beyond a reasonable doubt (Matter of Anthony M., 63 NY2d 270, 280; People v Contes, 60 NY2d 620, 621; Jackson v Virginia, 443 US 307, 319). Applying that standard, we conclude that the conviction of Fred Foster should be sustained but that as to Gregory Reed the indictment should be dismissed.
Although Fred Foster did not take the stand, his statement in which he admitted that he was at the scene and saw the stabbing and that he had been looking for the victim was *1147 introduced. Pierce testified that Fred Foster had previously threatened to kill the victim, that he saw Fred Foster at the scene as he passed it on his way to Gregory Reed’s apartment, that after he had been at Reed’s apartment a short time Fred Foster came in and said that “if anybody comes up asking for him, that he was upstairs painting along with Greg,” and that Fred Foster called him repeatedly thereafter, asking him to testify that he was not around when the crime was committed and threatening to kill him if he did not. Clearly, therefore, the evidence was sufficient to establish Fred Foster’s guilt beyond a reasonable doubt.
With respect to Gregory Reed, however, the situation is quite different. He did testify and his testimony was that he had been painting his apartment and learned about the incident from others but had nothing to do with it. That testimony was consistent with his prior statements to the police, with the statements of Fred Foster and Jerry Foster, both of whom made statements which were introduced in evidence and both of whom stated that Gregory Reed was not present when the victim was stabbed, and with the testimony of eyewitness Donald Mason that none of the three defendants were involved. Pierce testified, as already noted, that when he passed the scene he saw Fred Foster, but continued on and went directly to Gregory Reed’s apartment, where he found Reed painting, and that Fred Foster came in a little while later.
The only witness who identified Reed as a participant in the stabbing was Jashel Leslie. But he conceded that for some time prior to the incident he claimed to have witnessed he had been drinking and smoking marihuana, and his testimony not only as to the time of the incident but also as to the location of the crime scene, as to what he did after he witnessed the crime, and as to the event itself were all “involved in ‘hopeless contradictions’ ” (People v Ledwon, 153 NY 10, 21). Illustrative is that as to the incident itself, Leslie testified that defendant had a knife and had stuck the victim, but also testified that Jerry Foster had stabbed the victim, then changed that testimony to state that Fred Foster stabbed the victim and Jerry Foster was holding a pipe gun on him, but the next day testified that his prior testimony that Jerry Foster had stabbed the victim was truthful, then that Greg and Reed (defendant’s name is Gregory Reed) had stabbed the victim, then that Jerry Reed and Greg Reed had stabbed the victim, then that when he talked about Greg and Reed sticking the victim he meant Jerry Foster. Defendant’s guilt “cannot be established beyond a reasonable doubt by the testimony of such a witness, who is, evidently, either from moral *1148 or mental defects, irresponsible” (id., p 22; see also, People v Reed, 40 NY2d 204; People v Stewart, 40 NY2d 692).
We have considered the other issues raised by defendant Fred Foster and find them to be either unpreserved or without merit.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Alexander and Kane* concur in memorandum; Judge Kaye taking no part.
Order modified, etc.

 Designated pursuant to NY Constitution, article VI, § 2.