■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRY D. RUGG, SR., Appellant.—Levine, J. Appeals (1) from a judgment of the County Court of Albany County (Harris, J.), rendered January 15, 1986, upon a verdict convicting defendant of the crime of sodomy in the first degree, and (2) by permission, from an order of said court, entered February 4, 1986, which denied defendant's motion pursuant to CPL

440.10 to vacate the judgment of conviction, without a hearing.

The victim in this case was 36 years old, had a long history of mental illness with several hospitalizations therefor and, at the time of the commission of the crime, resided in an apartment in the City of Schenectady pursuant to a community-based residential mental health treatment program. He was on tranquilizing medication for schizophrenia. The victim was employed during the day in a sheltered workshop and worked at night arranging for or making home deliveries for a local pizzeria. According to the victim's testimony, he first met defendant through the owner of the pizzeria on April 11, 1985, and was offered part-time employment at one of defendant's fast-food restaurants. On the following Saturday evening, April 13, 1985, the pizzeria owner drove the victim to defendant's restaurant where he performed some odd jobs and errands until midnight. Then the victim, defendant, the owner of the pizzeria and a fourth person went to a striptease nightclub in the Town of Colonie, Albany County, where the victim imbibed several beers and possibly some wine. At one point, the victim participated on stage with some of the female dancers at the club. At about 3:30 A.M., he asked to be driven home and defendant, who also lived in Schenectady, volunteered. They first drove toward Schenectady, then drove back toward Albany so that defendant could check on another fast-food restaurant he owned. After that, defendant and the victim drove west and eventually defendant stopped his vehicle at an isolated location on Kings Road in Colonie. During the drive, defendant continuously fondled the victim's genitalia, despite the victim's "yelling * * * for him to get his hands off me". The victim also complied with defendant's direction to fondle him. Once they stopped, defendant attempted to force the victim to perform oral sex. When he resisted, defendant told him in a rough manner that he was going to perform anal intercourse, pulled down his lower garments and did so while the victim screamed. The victim testified to being afraid of physical violence if he resisted further. When the act was completed, defendant drove the victim home, stating to him in a stern and angry voice that he was not to tell anyone of the incident. Upon arriving at his apartment, the victim promptly complained to a staff member of the residential program. Later that morning, he was brought to a hospital for a physical examination, which revealed the presence of sperm in his rectum.

The People's evidence, if believed, was sufficient to support

the conviction. The jury was free to credit the victim's testimony that he was an unwilling participant in the acts committed by defendant and that he complied because of defendant's forcefulness and threats implied from defendant's speech and behavior. Given the victim's existing mental condition, further impaired from the consumption of alcohol, the jury could infer that the act of sodomy was accomplished by "forcible compulsion", i.e., physical force and the threat of immediate physical injury if the victim had not cooperated (*see,* Penal Law § 130.00 [8]). The fact that the jury could reasonably have arrived at a different conclusion on the issue of consent is not a basis upon which this court should disturb the verdict, which essentially hinged on the jury's assessment of the credibility of the victim's version and the inferences flowing therefrom (*see, People v Foster,* 64 NY2d 1144, 1146, *cert denied* 474 US 857; *People v Merrill,* 132 AD2d 573, 574, *lv denied* 70 NY2d 753).

We similarly find no basis to reverse defendant's conviction on his contention that he was denied his constitutional and statutory rights to a speedy trial (*see,* CPL 30.20, 30.30). Defendant was arrested April 15, 1985 and brought to trial the following December. He has failed to demonstrate the existence of any of the factors which would tend to establish a violation of his constitutional right to a speedy trial (*see,* CPL 30.20; *People v Taranovich,* 37 NY2d 442, 445). Similarly, there was no violation here of his statutory right to a speedy trial. Defendant was arraigned May 3, 1985, at which time defense counsel sought and obtained a 45-day adjournment to make an omnibus motion. That motion was brought June 10, 1985, returnable June 20, 1985, and decided by County Court on June 24, 1985. This entire period was excludable from the six-month statutory period of delay (*see,* CPL 30.30 [4] [a]). It is absolutely clear that, with the exclusion of the time defendant took to make his motion and the brief additional period taken by the court to render a decision thereon, the People had timely communicated on the record their present readiness for trial (*see, People v Kendzia,* 64 NY2d 331, 337).

Next, defendant claims that reversible error was committed in County Court's *Sandoval* ruling that permitted the prosecution to impeach him concerning a 1978 conviction for criminal facilitation in the fourth degree, arising out of a scheme to defraud an insurance company, which was reversed on appeal on the ground that it was based on insufficiently corroborated accomplice testimony (*see, People v Rugg,* 91 AD2d 692, 693). The record, however, discloses that defendant did not raise

this ground for excluding that conviction in his formal motion papers or at the *Sandoval* hearing before County Court. The underlying facts of the conviction were clearly relevant on the issue of credibility. Defendant had the burden of going forward and establishing the basis for exclusion of convictions or bad acts for impeachment purposes *(People v Sandoval,* 34 NY2d 371, 378). If anything, the record indicates that defendant acquiesced in the court's *Sandoval* ruling, much of which was favorable to him. Therefore, this objection was not preserved for review. In any event, the error, if any, was harmless and would not have been critical to defendant's decision not to testify.

Defendant's remaining contention on the merits, raised in both his direct appeal and his appeal from the denial of his motion to vacate the conviction under CPL article 440, is that he was denied the effective assistance of counsel. Our review of the record, however, persuades us that defendant received meaningful representation. Defense counsel evidenced competency and preparedness in pursuing the only viable defense strategy in the case, namely, that the victim had voluntarily participated in the sexual act committed by defendant. Defendant's attorney effectively attacked on cross-examination the weak points in the victim's testimony on this issue. Defendant's present claim that certain other persons, if called as witnesses, would have given testimony tending to establish this defense, is at best speculative and would have been inconsistent with their Grand Jury testimony. As to defendant's other claims regarding defense counsel's shortcomings, the effectiveness of the trial tactics defendant now advocates should have been taken are again either wholly speculative or would have been counterproductive to his primary defense.

In view of the heinous nature of the crime and defendant's extensive prior criminal record, we find no basis for modification of the 8⅓-to-25-year prison sentence imposed. Accordingly, the conviction and sentence should be upheld in all respects.

Judgment and order affirmed. Casey, J. P., Weiss, Yesawich, Jr., Levine and Mercure, JJ., concur.