OPINION OF THE COURT
Levine, J.
Defendant was convicted, following a bench trial, of attempted murder, second degree, assault, first degree, criminal *569 use of a firearm, first degree, and criminal possession of a weapon, second and third degrees. All of the charges arose out of the shooting of Guy Peduto shortly after 2:00 a.m., December 7, 1993, during a car chase in the Throgs Neck section of the Bronx. Peduto received serious head and body wounds. The rear window of the Pontiac sedan he was driving was shot out and there were multiple bullet holes in the automobile. When he was hit, Peduto lost control of the vehicle and crashed into two cars parked in a driveway. His assailants fled in their vehicle, leaving two Acura hubcaps and five 9 millimeter bullet casings at the scene.
Two out-of-court statements by Peduto, naming defendant as one of his attackers, were admitted into evidence under the “excited utterance” exception to the hearsay rule (see, People v Nieves, 67 NY2d 125, 135). The first of Peduto’s accusatory declarations was made to Dominic Cleary, a layperson who was walking to his home nearby when he heard gunshots and the crash, and came to Peduto’s assistance. The second statement implicating defendant was made about 10 minutes later to Officer Dennis Gardner, the first of the police to arrive at the scene.
Peduto was not called to the stand by the prosecution, having recanted his previous identifications of defendant in an affidavit submitted by the defense before the trial. Instead, Peduto was called as a defense witness. At the time of the trial, he was in a United States detention facility awaiting trial on Federal criminal charges. In his direct testimony he denied defendant was one of the persons who shot him. On cross-examination by the prosecution, he denied having told anyone that defendant had shot him. He described in detail the physical appearance of the person he saw firing at him. Peduto also acknowledged a 15-year close friendship with defendant and admitted that he had an extensive criminal record arising out of his activities as a car]acker. He invoked his privilege against self-incrimination in response to other questions about specific car thefts, and his criminal associates, including one Glicerio Castaldo.
The People introduced rebuttal evidence that Peduto had told another police officer, John Fitzgerald, both at the scene of the incident and after his removal to a hospital, that defendant was one of the shooters. Another officer, Detective George Wood, testified to a later conversation with Peduto at the hospital, after Peduto had been told by hospital personnel that he would survive the shooting. Peduto told Detective Wood *570 that he knew the identity of the shooter but refused to name him, explaining that “I will take care of it myself.” The People also called Glicerio Castaldo as a rebuttal witness. Castaldo had been a criminal confederate of Peduto who became an FBI informant under a plea agreement. He recounted a visit with Peduto after he left the hospital. Peduto had described in detail how defendant drove up beside his car in a white Acura Legend when the shooting began, both defendant and another acquaintance firing at him. Peduto also told Castaldo that now that he had recovered from his wounds, “he had to go get it straightened out.”
The trial court sitting without a jury rendered a guilty verdict. The Appellate Division affirmed (243 AD2d 340). A Judge of this Court granted defendant leave to appeal, and we now also affirm.
In urging reversal, defendant’s initial attack is on the admissibility, under the excited utterance exception, of Peduto’s extrajudicial statements identifying defendant as his assailant. Defendant’s arguments are unavailing. The testimony of Cleary was that he came to Peduto’s aid less than a minute after the car crash. Peduto was bleeding profusely, moaning in pain and begging for help. Peduto twice named defendant when Cleary asked who shot him. Officer Gardner, who assisted removing Peduto from the vehicle and transferring him to an ambulance, stated that Peduto was crying hysterically, repeatedly asking whether he was going to die. Peduto identified defendant as the person who shot him, and repeated the name over and over again. He referred to defendant as a one-time friend. Peduto also told Gardner that the assault vehicle defendant drove was a white Acura.
The foregoing evidence represents near-classic examples of the excited utterance exception. Thus, the trial court could readily conclude that Peduto’s statements were admissible under that exception as “spontaneous declarations made by a participant while he is under the stress of nervous excitement resulting from an injury or other startling event, while his reflective powers are stilled and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection and deliberation” (People v Caviness, 38 NY2d 227, 230-231). That the declarations were made in response to questioning, and that there was an approximately 10-minute interval from the happening of the event until the second declaration was made to Officer Gardner, would not impair their admissibility, since neither of these *571 factors detracted from their spontaneity under the circumstances as described by the witnesses to whom Peduto spoke at the crime scene (see, People v Cotto, 92 NY2d 68, 79; People v Edwards, 47 NY2d 493, 497-498).
Defendant, however, contends that the circumstances of a nighttime attack during a high-speed car chase demonstrated that Peduto lacked the capability of recognizing him as one of the attackers. To be sure, for an excited utterance to be admissible, it must be inferable that the declarant had an opportunity to observe personally the event described in the declaration (see, 6 Wigmore, Evidence § 1751, at 222 [Chadbourn rev 1976]). In most instances, that requirement is satisfied self-evidently from the circumstances that the declarant was an actual participant in the event which is the subject of the declaration (id.).
Here, the evidence permitted the trial court reasonably to infer that Peduto had a sufficient opportunity to observe who attacked him and to identify defendant as one of the shooters. Peduto had been a close personal friend of defendant for many years. The car chase was extended over more than a city block, which was illuminated by street lights. Peduto, in his statement to Officer Gardner, was apparently able accurately to identify the crime vehicle as a white Acura Legend, as confirmed by the hubcaps found at the scene. Moreover, Peduto testified that he could and did observe one of the attackers through his rearview mirror during the pursuit sufficiently to describe his appearance in detail.
The trial court was charged with the responsibility of resolving a mixed question of law and fact in its initial determination of the admissibility of the Peduto declarations as excited utterances (see, People v Edwards, supra, 47 NY2d, at 497; People v Caviness, supra, 38 NY2d, at 231). In making that initial determination of admissibility, the trial court necessarily rejected defendant’s objection based upon the asserted inability of Peduto to have observed the defendant as one of the shooters. The Appellate Division, in upholding the admissibility of Peduto’s declarations under the excited utterance exception, agreed: “The declarant was a participant in the events, clearly speaking from his personal observation” (243 AD2d, at 340, supra). The undisturbed findings by the courts below that Peduto had an opportunity to observe who attacked him have support in the record and are, thus, beyond our further review (see, People v Cotto, supra, 92 NY2d, at 76-77).
*572 Nonetheless, defendant asserts that the trial court committed reversible error in connection with the admission of Peduto’s statements, in refusing to receive (1) expert testimony on night visual perception under Peduto’s circumstances; and (2) evidence, disclosed by the prosecution to the defense, that Peduto was biased against defendant because he feared retaliation for his own previous assault on defendant. It was well within the trial court’s sound discretion to reject expert testimony on a matter (night visibility) that is a subject of common experience of lay triers of fact (see, People v Mooney, 76 NY2d 827, 828; People v Cronin, 60 NY2d 430, 433).
Nor do we discern any error in the trial court’s treatment of Peduto’s claimed bias against defendant on the admissibility of his declarations. Generally, the bias of an excited utterance declarant functions as a basis for impeachment of the declaration, thus pertinent to the weight, rather than admissibility of the declaration (see, 6 Wigmore, Evidence, op. cit., § 1751, at 224). That was the ruling of the trial court here. To the extent that defendant contends that Peduto’s bias prompted him to name defendant without actually having made any observation of his attacker, defendant is foreclosed by the undisturbed findings, already discussed, that Peduto’s identification was based upon personal observation.
Defendant raises one other point requiring extended discussion — his challenge to the sufficiency of the evidence to support a guilty verdict. Specifically, defendant points to the fact that the prosecution’s entire case was based upon Peduto’s spontaneous declarations naming defendant as one of his assailants. Defendant notes that Peduto’s extrajudicial accusatory statements were directly contradicted by his in-court testimony, in which he denied that defendant shot him and swore that another man, whose appearance was drastically different, was the actual shooter. Defendant claims that these conflicting versions of the facts rendered by Peduto require reversal and dismissal as a matter of law. Defendant relies upon the rule articulated most recently in People v Jackson (65 NY2d 265, 272):
“When all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence, the jury is left without basis, other than impermissible speculation, for its determination of either.” (See also, People v Foster, 64 NY2d 1144, 1147; People v *573 Stewart, 40 NY2d 692, 699; People v Reed, 40 NY2d 204, 208-210; People v Ledwon; 153 NY 10.)
We, however, do not read Jackson and its predecessors as setting up a per se rule to be applied uncritically in all such cases without an evaluation of the nature and quality of the conflicting, inculpating and exculpating renditions of the event by the single prosecution witness. As explained in Jackson, dismissal of a directed verdict because of hopelessly contradictory testimony from the single prosecution witness follows from principles related to “the relative functions of judge and jury respecting reasonable doubt” (65 NY2d, at 271). The Jackson decision quotes extensively from the District of Columbia Circuit’s decision in Curley v United States (160 F2d 229, cert denied 331 US 837, reh denied 331 US 869) in explaining that the rule announced in Jackson is derived from general principles governing when a court should take a criminal case away from the jury.
As explained in the quoted excerpts from Curley, while the jury has the authority to determine credibility, weigh evidence and draw inferences from proven facts, “ ‘[i]t is the function of the judge to deny the jury any opportunity to operate beyond its province. The jury may not be permitted to conjecture merely, or to conclude upon pure speculation’ ” (People v Jackson, supra, at 271 [quoting Curley v United States, supra, 160 F2d, at 232]). Thus, the decision of the Trial Judge to take the case from the jury by dismissal or directed verdict of acquittal will turn on the foregoing distinctions between mere conjecture and evidence-based conclusions. “ ‘In a given case * * * that determination may depend upon the difference between pure speculation and legitimate inference from proven facts’ ” (People v Jackson, at 272 [quoting Curley v United States, at 233]).
In Jackson we explained how the foregoing general principles of the Curley opinion might apply to a case where the only prosecution witness has given totally irreconcilable versions of the events — one incriminating, the other exonerating, the defendant. In such a case, we said, when the irreconcilability affords no foundation in the proof for the jury to resolve the conflict in the witness’s testimony, dismissal is warranted because “the jury is left without basis, other than impermissible speculation” to decide guilt or innocence (65 NY2d, at 272).
A corollary of the Jackson rule on self-contradictory witness’s testimony, and its rationale, however, is that when *574 the jury, acting within its rightful province of determining credibility, weighing evidence and drawing justifiable inferences from proven facts, has an objective, rational basis for resolving beyond a reasonable doubt the contradictory inculpating and exculpating versions of the events given by the witness, its determination of guilt is no longer based on “impermissible speculation” and should be upheld. We consider this the sounder view, which is the analysis adopted in several other jurisdictions, rejecting a per se rule of automatic dismissal because of inconsistency between the witness’s trial testimony and earlier statements (see, Di Carlo v United States, 6 F2d 364 [2d Cir] [L. Hand, J.]; People v Cuevas, 12 Cal 4th 252, 906 P2d 1290; State v Mancine, 124 NJ 232, 590 A2d 1107; Acosta v State, 417 A2d 373 [Del]; see also, 2 McCormick, Evidence § 251, at 118-120 [4th ed]; contra, United States v Orrico, 599 F2d 113 [6th Cir]).
Indeed, we faced an analogous issue in People v Cotto (supra). There, as here, an eyewitness at trial recanted an earlier accusatory statement against defendant, and at the Sirois hearing to determine whether his changed position was the result of defendant’s witness-tampering, the witness also recanted earlier statements to law enforcement authorities that he had been threatened. Nonetheless, we upheld, as amply supported by the evidence, the trial court’s reasoned resolution of the conflicts in the witness’s versions, crediting his out-of-court statements that he was coerced (see, People v Cotto, supra, 92 NY2d, at 76).
Here, the trial court as trier of fact had a sufficient, non-speculative basis to resolve the contradictions between Peduto’s out-of-court statements implicating defendant in the crimes, and his exonerating testimony at the trial. First, as excited utterances, Peduto’s out-of-court accusatory declarations, made without opportunity for reflection while he was crying hysterically and repeatedly asking whether he was going to die, could rationally and objectively have been credited by the trial court as inherently more reliable than Peduto’s later versions, formulated once “there ha[d] been time to contrive and misrepresent” (People v Brown, 80 NY2d 729, 736).
Second, as the Appellate Division found, the cross-examination of Peduto and other impeachment evidence gave the trial court an “ample basis [for] * * * discrediting the victim’s highly suspect and thoroughly impeached efforts, as a defense witness, to exculpate defendant” (243 AD2d, at 340, *575 supra). Thus, based upon the cross-examination, as well as the testimony of Detective Wood and Glicerio Castaldo, the trial court could well have concluded that Peduto perjured himself in his exculpating testimony in conformity with the moral code of his criminal subculture — of noncooperation with official law enforcement efforts to prosecute the perpetrator of the crimes against him, in favor of resort to retributive self-help (see, People v Chavez, 26 Cal 3d 334, 364, 605 P2d 401, 420 [in light of witness’s statement that “the whole matter ‘should be settled in the streets’ rather than in court * * * the jury had a sound basis for discounting the witness’ trial testimony” in crediting his prior accusatory statement]). Thus, the rule of People v Jackson and its predecessors does not afford a basis to disturb the trial court’s verdict of guilt.
Defendant’s remaining arguments, including the contention that the People failed to turn over materials as required by Brady v Maryland (373 US 83) and People v Rosario (9 NY2d 286), are either unpreserved or without merit. Accordingly, the order of the Appellate Division should be affirmed.