*521
 
 OPINION OF THE COURT
 

 Smith, J.
 

 The dispositive issue in this case is whether the prosecutor’s conduct throughout the trial effectively denied defendant the right to a fair trial. We conclude that it did, reverse the order of the Appellate Division and order a new trial.
 

 Complainant, Diane Chappelle, is the wife of the pastor of the International Baptist Church in Brooklyn, New York, and a teacher at the International Christian School, located within the church. In the early evening on April 8, 1996, complainant walked to school to prepare for class the following day. After finding her classroom in complete disarray, complainant encountered a gunman standing in the hallway approximately three feet away as she was exiting the room. She screamed, backing into the classroom with her hands up and observing the gunman for approximately 5 to 10 seconds before closing her eyes as instructed. The gunman further rummaged through the classroom looking for money and stole complainant’s wedding ring. He then tied complainant’s hands and feet with a cord while searching the church for money. When complainant was certain that the gunman had fled, she freed herself, ran home and called the police.
 

 Shortly thereafter, complainant viewed two photo arrays, both of which included a photograph of defendant. Complainant positively identified defendant in both arrays. Then, approximately three months later, in July 1996, complainant positively identified defendant in a police lineup. Defendant was subsequently indicted and charged with robbery in the first degree, burglary in the second degree and related offenses.
 

 Before trial, the court conducted a hearing to determine, among other things, the admissibility of complainant’s identification testimony. The court ruled that testimony regarding the lineup was admissible at trial. However, the court denied the People’s request to order defendant to turn over a photograph of the lineup after ascertaining that the arresting officer had lost her file containing the photos.
 

 During trial, while eliciting testimony from Detective Kelly regarding the lineup, the prosecutor asked defense counsel for the photographs of the lineup, in the presence of the jury, in complete contravention of the court’s pretrial ruling. Defense counsel immediately objected and, outside the presence of the jury, moved for a mistrial, contending that the prosecutor had violated the court’s order and noting that if defense counsel did
 
 *522
 
 not admit the photographs into evidence, it would appear to the jury as though defendant were hiding something. The court promptly administered curative instructions to the jury, denied defendant’s motion, and sternly admonished the People. Ultimately, defense counsel admitted the photographs into evidence during complainant’s cross-examination.
 

 Defendant testified in his own defense that, at the time of the crime, he was at home eating dinner with his parents. During cross-examination, the People questioned defendant about a narcotics arrest in which defendant’s parents were also arrested. Commenting that the drug activities of defendant’s parents made “the cover of the [New York] Post,” the prosecutor briefly displayed to defendant, in the presence of the jury, the front page of the paper containing the article. Defense counsel objected and again moved for a mistrial. The court sustained the objection, denied the motion, and again admonished the People, stating: “That is absolutely contemptuous, what you just did in this courtroom here.”
 

 Finally, during the People’s summation, the prosecutor implied that defendant attempted to keep the photographs of the lineup from the jury, but that “after [the People] knew about the photo, we got it. Oh, yeah, we got it. * * * [The People] gave it to you * * * [and] published those photos to you so you got to see the photos.” Morever, the prosecutor commented that defendant did not have a choice in taking the stand “when good, nice people take the stand.”
 

 The jury ultimately found defendant guilty of robbery in the first degree and burglary in the second degree. The Appellate Division affirmed, with two Justices dissenting. A Judge of this Court granted defendant’s criminal leave application.
 

 We conclude that the prosecutor’s conduct throughout the trial cumulatively denied defendant the right to a fair trial. The prosecution completely disregarded the court’s pretrial ruling — that defendant was not required to provide the People with a photograph of the lineup — by asking defendant for a copy of the photograph in the presence of the jury. Indeed, defense counsel stated that he felt compelled to introduce the photographs into evidence. Moreover, despite the court’s strong rebuke and threat of sanction, the prosecutor continued, over sustained objection, to imply during summation that defendant intentionally withheld the photos of the lineup from the jury and that the People had to “try[ ] to get that photo.” Equally impermissible with respect to defendant’s right to testify was
 
 *523
 
 the prosecution’s comment during summation that defendant essentially had no choice but to testify in his defense.
 

 Finally, although defendant concedes that he “opened the door” to questions regarding his past crimes, we agree with the dissent at the Appellate Division that the prosecutor exceeded the bounds of fair advocacy when he noted that the alleged drug dealing of defendant’s parents “made the cover of the Post” and displayed a copy of that newspaper. By doing so, the prosecutor impermissibly prejudiced defendant in the eyes of the jury by deliberately incorporating into the trial matters not admitted into evidence.
 

 We reject the People’s argument that the court’s prompt curative instructions eliminated the prejudicial effect of any misconduct
 
 (cf., People v Galloway,
 
 54 NY2d 396). A court’s instructions to a jury to disregard matters improperly brought to their attention cannot “always assure elimination of the harm already occasioned”
 
 (People v Carborano,
 
 301 NY 39, 42-43). Whether defendant received a fair trial in light of any errors necessarily “depend [s] upon the nature of the proof adduced and the type of error committed”
 
 (id.,
 
 at 43). We recognize that every trial will not be conducted free of some error. In this case, however, the prosecutor persistently disregarded the trial court’s rulings. Thus, while each instance of prosecutorial misconduct, standing alone, would not necessarily justify reversal, we conclude that the cumulative effect of such conduct substantially prejudiced defendant’s rights. Evenhanded justice and respect for the fundamentals of a fair trial mandate the presentation of legal evidence unimpaired by intemperate conduct aimed at sidetracking the jury from its ultimate responsibility — determining facts relevant to guilt or innocence
 
 (People v Alicea,
 
 37 NY2d 601, 605).
 

 Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order reversed, etc.