[816 NE2d 1257, 783 NYS2d 321]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL CALABRIA, Appellant.

Argued May 6, 2004; decided June 8, 2004

## POINTS OF COUNSEL

*Lynn W.L. Fahey,* New York City, for appellant. The People failed, as a matter of law, to establish appellant's guilt beyond a reasonable doubt, because the sole eyewitness's identification of him, based on a "quick glance" or "glimpse" of an armed assailant of whom she could give only a vague description inconsistent with appellant, was patently unreliable. (*People v Reed,* 40 NY2d 204; *People v Santos,* 38 NY2d 173; *People v Ledwon,* 153 NY 10; *People v Foster,* 64 NY2d 1144; *People v Stewart,* 40 NY2d 692; *People v Logue,* 35 NY2d 658; *People v Sickles,* 35 NY2d 792; *People v Abelson,* 309 NY 643; *People v Acerra,* 282 NY 628; *People v Jackson,* 65 NY2d 265.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Camille O'Hara Gillespie* and *Leonard Joblove* of counsel), for respondent. Defendant's claim that the evidence was legally insufficient to establish his identity as the person who robbed the victim and burglarized the International Baptist Church is partly unpreserved for appellate review as a matter of law. In any event, the evidence was legally sufficient to establish defendant's guilt beyond a reasonable doubt. (*People v Arroyo,* 54 NY2d 567, 456 US 979; *People v Contes,* 60 NY2d 620; *Jackson v Virginia,* 443 US 307; *People v Ledwon,* 153 NY 10; *People v Malizia,* 62 NY2d 755, 469 US 932; *People v Gruttola,* 43 NY2d 116; *People v Concepcion,* 38 NY2d 211; *People v Finger,* 95 NY2d 894; *People v Gray,* 86 NY2d 10; *People v Bynum,* 70 NY2d 858.)

## OPINION OF THE COURT

CIPARICK, J.

After a jury trial, defendant was convicted of one count of robbery in the first degree and one count of burglary in the second degree. The key issue at trial was the identification of defendant as the perpetrator. There was one eyewitness, the victim, who positively identified defendant both at a lineup and in court. Defendant challenges the sufficiency of the evidence to support his conviction based upon the eyewitness identification.

"The standard for reviewing the legal sufficiency of evidence in a criminal case is whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' " (*People v Contes,* 60 NY2d 620, 621 [1983],

quoting *Jackson v Virginia*, 443 US 307, 319 [1979]).[1] We have previously recognized that the testimony of one witness can be enough to support a conviction, noting that it is typically the province of the jury to determine a witness's credibility (*see People v Arroyo*, 54 NY2d 567, 578 [1982]).

Indeed, although a conviction may not stand merely because "some evidence" exists "to sustain the charge," whether guilt has been established beyond a reasonable doubt is a jury issue "in most cases, where there is a conflict as to the facts, or the proof is open to opposing inferences" (*People v Ledwon*, 153 NY 10, 17, 18 [1897]). Nevertheless, this Court may in rare instances reverse a conviction on the ground that the evidence failed as a matter of law to establish guilt based on an eyewitness identification beyond a reasonable doubt, but only when "hopeless contradictions" by the sole prosecution witness make his or her testimony incredible or unreliable as a matter of law (*People v Foster*, 64 NY2d 1144, 1147 [1985] [citation omitted]). That in no way happened here.

Incredibility as a matter of law may result "[w]hen all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence," because in that event "the jury is left without basis, other than impermissible speculation, for its determination of either" (*People v Jackson*, 65 NY2d 265, 272 [1985] [citation omitted]; *see also People v Fratello*, 92 NY2d 565, 573 [1998]). Thus in *Ledwon*, we determined that the evidence was legally insufficient to establish that the defendants had committed murder when the 12-year-old eyewitness testified, in turn, that he had witnessed the deceased commit suicide; that he had witnessed the defendants kill the deceased; and that he had witnessed the deceased commit suicide after all. In those circumstances, there was simply no way—based on the evidence, as opposed to on rampant speculation—that the jury could rationally determine beyond a reasonable doubt that one of the contradictory accounts was true and the other, false.

Here, by contrast, the victim never wavered in her testimony. She identified defendant on two occasions as the man who robbed her and was certain about the identification, stating

---

1. Our review is necessarily limited to the evidence presented to the jury at the second trial. As such, neither facts presented at nor issues relevant to the first trial, such as the alibi defense or the prosecutorial misconduct, nor the inadmissible results of lie detector tests, may be considered by this Court, as urged by the dissent.

that she "got a good look" and "absolutely" saw the perpetrator long enough to remember what he looked like.[2] The jury reasonably concluded that the victim's testimony was both credible and reliable. In addition, there was evidence adduced that, when brought to the precinct to await the lineup, defendant asked, "Did she really pick me out?" Although defendant claimed that he had heard the police mention that the complainant was a woman, the police denied that they had ever told this to defendant or mentioned it in his presence. Viewing the evidence in the light most favorable to the prosecution, as we must, it was rational for the jury to determine beyond a reasonable doubt that defendant committed the crimes charged.

Although the dissent purports to determine, as a matter of law, that the evidence was legally insufficient to support the verdict—an inquiry well within our province—it is apparent that the concerns of our dissenting colleagues in fact reflect their belief that the jury got it wrong. But we are a court of law, with no power of factual review. Although the Appellate Division is empowered to reverse a conviction because, in its view, the verdict is against the weight of the evidence (see CPL 470.15 [5]; People v Bleakley, 69 NY2d 490, 495-496 [1987]), we are not (see People v Leonti, 18 NY2d 384, 390 [1966]; People v Eisenberg, 22 NY2d 99, 101 [1968]; Karger, Powers of the New York Court of Appeals § 135, at 773 [3d ed]). Here, the eyewitness, a religious school teacher, testified under oath—without contradiction—that she was able to see the perpetrator's face, albeit briefly, and that she was certain that defendant was the man who had robbed her at gunpoint. Although the dissent doubts her credibility, 12 jurors did not. Since the jury's determination was rational, its verdict may not be disturbed.

We note that, although defendant sought to raise the issue on appeal, he did not attempt at trial to introduce expert testimony regarding certain psychological theories affecting the reliability of eyewitness identification. Had defendant offered such proof, the trial court in its discretion could have determined whether it would have been helpful to the jury in assessing the reliability of the victim's identification testimony (see People v Lee, 96 NY2d 157, 162 [2001]).

---

**2.** Although the dissent states that the victim originally described defendant as a man "of slight build" (dissenting op at 85), the victim initially described defendant as a 25-year-old white male with black hair, 5 feet, 10 inches tall. She later expanded the description to reflect that defendant was of thin-to-medium build with no facial hair.

Accordingly, the order of the Appellate Division should be affirmed.

ROSENBLATT, J. (concurring). This is a troublesome case in which the proof of guilt is thin and the evidence somewhat contradictory. But I cannot agree that the conviction must be reversed. For the Court to reverse we would have to create a new rule by which a very brief encounter—resulting in an unwavering eyewitness identification—is declared insufficient as a matter of law. That would not be a good idea. Most of us know of the weaknesses in one-on-one confrontations. Some are trustworthy, others not. It comes down to a jury question, and perhaps the Appellate Division's interest of justice powers.

From this distance, it is almost impossible for us to weigh proof a jury has seen and heard. Further, I think it is unwise for a law court to reverse convictions based on our belief—contrary to the jury's—that there may be a reasonable doubt of defendant's guilt. I would urge the District Attorney to undertake a fresh and unbiased review of the case and investigate fully all the evidence, including proof not part of the record before us.

I recognize that in the Appellate Division and in our Court the District Attorney has argued to uphold the conviction. That's understandable, given the jury's verdict and the prosecution's natural unwillingness to undermine it. But this is a particularly disquieting case, one that calls for a new and fastidious layer of review. If on further investigation the District Attorney shares these concerns, he has the power and, I am confident, the motivation, to take whatever steps are appropriate to do justice.

G.B. SMITH, J. (dissenting). The totality of the evidence was legally insufficient to prove the identity of the defendant. Indeed, the evidence in this case raises a serious question of whether an innocent man has been convicted.*

The case before us is here after a second trial. After the first trial, this Court reversed the conviction because of prosecutorial misconduct (94 NY2d 519 [2000]). In our prior opinion, we stated the facts:

---

* Although defendant received a 20-year sentence after his first trial, he refused after reversal to plead guilty in exchange for time served. While evidence of the results of a lie detector examination is inadmissible as evidence in a court of law, it is undisputed that the defendant passed two lie detector tests.

"Complainant, Diane Chappelle, is the wife of the pastor of the International Baptist Church in Brooklyn, New York, and a teacher at the International Christian School, located within the church. In the early evening on April 8, 1996, complainant walked to school to prepare for class the following day. After finding her classroom in complete disarray, complainant encountered a gunman standing in the hallway approximately three feet away as she was exiting the room. She screamed, backing into the classroom with her hands up and observing the gunman for approximately 5 to 10 seconds before closing her eyes as instructed. The gunman further rummaged through the classroom looking for money and stole complainant's wedding ring. He then tied complainant's hands and feet with a cord while searching the church for money. When complainant was certain that the gunman had fled, she freed herself, ran home and called the police" (94 NY2d at 521).

The complainant gave substantially the same testimony at the second trial. She testified that she observed defendant for more than a glimpse. She also described herself as "upset" and "disoriented." She identified defendant as the perpetrator and testified that she picked him out of a lineup.

After the second trial, defendant was convicted of robbery in the first degree and burglary in the second degree. That conviction was affirmed by the Appellate Division.

There are several reasons why the conviction in this case should not be upheld. First, the only issue in this case, as it was in the first, was identification. The complaining witness observed the defendant only for a matter of seconds before she was told not to look at him. The complaining witness was "upset" and "disoriented" by the encounter. Her original description of the perpetrator was that he was of slight build. The defendant in this case weighed 215 pounds and was 5 feet, 7 inches tall and such a person is not of slight build. It is true, as the majority emphasizes, that the complaining witness was, judging from the record, a perfectly honest woman and a "religious school teacher." (Majority op at 83.) It is even possible that she is one of those rare people who, having glimpsed a stranger for seconds in the midst of a terrible emotional trauma, could reliably identify that stranger months later—but the rec-

ord does not support a finding beyond a reasonable doubt that she did so here.

Second, apart from the complaining witness's unreliable identification, no evidence of substance connects defendant to the crime. While there is some indication that the defendant was apprehended because he lived in the area, the evidence was that the defendant actually lived 1.2 miles away in a densely populated area of Brooklyn. The majority (at 83) relies on defendant's question, "Did she really pick me out?," asked at a time when, the police testimony indicates, no one had told him the victim was a woman. But the same testimony indicates that no one had told him he was "picked out of photos." Either he was guessing about the photos, in which case, why not also about the sex of the victim, or someone had told him more than the testimony discloses.

Third, a fingerprint and a palm print from a cabinet admittedly handled by the perpetrator did not match defendant's.

The majority correctly states the applicable legal test: whether a rational trier of fact could have found, beyond a reasonable doubt, that defendant committed this crime. The test is not met. A rational person might believe that defendant is possibly or probably guilty, but it is irrational to say, on this record, that all reasonable doubt of his guilt has been eliminated. It is true that we have upheld convictions in the past based on the identification testimony of a single eyewitness, but in none of those cases was there as little reason as there is here to believe that the identification was correct.

Apart from the weakness of the evidence against defendant, there are other troubling aspects of this case. The defendant testified in the first trial that he was at home eating dinner with his parents at the time of the robbery. In the second trial, there was no alibi defense. The record indicates that the defendant's father was suffering from heart problems and that his mother was suffering from a physical disease and depression. While the parents could have testified at the first trial and did not, neither was available to testify at the second trial.

As noted above, the conviction in the first trial was reversed by this Court because of the actions of the prosecutor. Those actions prejudiced defendant because he was unable to mount an adequate alibi defense in his second trial.

Thus, the conviction should be reversed.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO and READ concur with Judge CIPARICK; Judge ROSENBLATT concurs in a separate concurring opinion; Judge G.B. SMITH dissents and votes to reverse in another opinion in which Judge R.S. SMITH concurs.

Order affirmed.