McKeon, P.J.
(dissenting). On September 26, 2002, at about 4:57 a.m., in the vicinity of East Fordham Road and Marion Avenue in the Bronx, New York City Police Captain Jeffrey Hart, who was serving as duty captain for four Bronx precincts, saw an SUV driven by defendant Melvin Aguilar mount a sidewalk, strike several parking meters and come to rest after colliding with the rolled down gate of a store at the location. At trial, Captain Hart testified that when he approached defendant, he found him unresponsive, with his eyes closed, vomit on his clothes and smelling of alcohol.
*5 A police sector car was summoned. Police Officer Michael Mc-Cauliffe of the 46th Precinct responded within minutes. At trial, Officer McCauliffe described defendant as “passed out,” “completely unconscious” and staggering out of his car, with bloodshot eyes and slurred speech. Officer McCauliffe, according to his trial testimony, arrested defendant for driving while intoxicated. Officer McCauliffe corroborated the testimony of Captain Hart that defendant smelled of alcohol and there was vomit in the vehicle.
Defendant was taken to the 45th Precinct where, at about 6:00 a.m., he was offered the opportunity, by Police Officer John Lembke of the Intoxicated Driver Unit, to take a breath test. Defendant declined. Officer Lembke described defendant, in his testimony at trial, as having vomit on the front of his shirt. It was Officer Lembke’s opinion, as expressed during the trial, that defendant was intoxicated.
At trial, defendant testified that on September 25, 2002, from 8:30 a.m. to 6:30 p.m., he worked at his regular employment with RadioShack in Brooklyn. According to his trial testimony, upon completing his day’s work, he took a subway to Bay Ridge Brooklyn, where he visited with his cousin Nelson Borjaorja until about 11:00 p.m., when he took a train to the Bronx, arriving at about 1:00 a.m. at the home of his cousin Ronny Rodriguez, where defendant’s brother Mario Aguilar was staying.
At about 3:00 a.m., according to defendant’s testimony, he borrowed his cousin’s SUV and, together with his brother, went to a restaurant in Washington Heights, where he remained until about 4:15 a.m., when he left by himself to return to the Bronx. Defendant denied that he had been drinking alcohol. However, he did not dispute the happening of the accident, explaining to the jury that he had fallen asleep at the wheel, but had not passed out from alcohol-related reasons. Defendant admitted that he declined to take a breath test, a decision, he explained at trial, which was prompted by poor police treatment and one, with the passage of time, he has since come to regret. Defendant was the only defense witness; his relatives did not testify. The jury convicted him of driving while intoxicated and driving with ability impaired. The People concede — and I agree — that defendant’s conviction for driving while impaired should be dismissed as an inclusory concurrent count.
Against this factual backdrop, the majority concludes that defendant was deprived “of his right to a fair trial” because of the “prosecutor’s improper and inflammatory remarks in summa *6 tion” (majority op at 2). Undeniably, the tone and tenor of the prosecutor’s closing argument, marked, as it was, by rhetorical excess, falls short of the prosecutor’s “mission,” so eloquently defined in People v Zimmer (51 NY2d 390, 393 [1980]), which “[i]s not so much to convict as it is to achieve a just result.”
It is quite understandable, therefore, that the People seek to explain some of the trial assistant’s inappropriate closing argument language by reference to his inexperience, as inartfully phrased remarks fueled by the emotions of the trial or as the human failing, shared by us all at one time or another, of having uttered words “better left unsaid.”
However, not all of the words spoken by the trial assistant in his summation were outside the bounds of legal propriety. Some of the prosecutor’s statements, while hardhitting, were responsive to arguments proffered by the defense, before a Bronx jury, which, inter alia, sought to blame the police for defendant’s decision not to take a breath test or, otherwise, put the police on trial. So, too, the prosecutorial remarks about defendant’s failure to call his relatives to confirm his sobriety do not constitute impermissible burden shifting. (People v Tankleff, 84 NY2d 992 [1994].)
And as can be gleaned from People v Ashwal (39 NY2d 105, 111 [1976]), cited with approval by the majority, the court acknowledged that the prejudicial effects of improper prosecutorial remarks in summation can be dissipated by a court “[p]romptly and clearly advising the jury that the comments were improper and must be completely disregarded” (citations omitted). That is what the court did here.
The majority relies on People v Calabria (94 NY2d 519 [2000]). But Calabria is more than an inflammatory summation case; there, the prosecutor, in addition to inappropriate summation rhetoric, disregarded pretrial rulings and “cumulatively denied defendant the right to a fair trial.” (Id. at 522.)
While it is true that some of the prosecutor’s words can rightly be described as intemperate, it is only when summation improprieties are so egregious, viewed within the entirety of the trial, that a deprivation of a fair trial argument by a defendant can be sustained. (People v D'Alessandro, 184 AD2d 114, 120 [1992], lv denied 81 NY2d 884 [1993].) The words of a prosecutor’s summation cannot be examined in a vacuum, rather it is only “[o]n consideration of the whole record” that a reviewing court can find that a defendant was deprived of a fair trial. (People v Arce, 42 NY2d 179, 191 [1977].)
*7 The rule in this state is well settled: An error is prejudicial if “[an] appellate court concludes that there is a significant probability, rather than only a rational possibility . . . that the jury would have acquitted the defendant had it not been for the error or errors which occurred.” (People v Crimmins, 36 NY2d 230, 242 [1975].)
The majority does not address the underlying facts of defendant’s conviction, or quantify the quantum of proof adduced at trial against him — it was overwhelming. And, its reliance on People v Bailey (58 NY2d 272, 278 [1983] [evidence “not overwhelming”]) and People v Collins (12 AD3d 33, 41 [2004] [evidence “hardly overwhelming”]) does not consider that each case, in the words of the authoring court, clearly represents a factual scenario where a defendant might well have been acquitted but for the inflammatory words of a prosecutor. Defendant’s conviction hardly fits that description.
In truth, the facts supporting his guilt “when perceived as a whole, overwhelmingly establishes guilt beyond a reasonable doubt, are inconsistent with his innocence and exclude to a moral certainty every other reasonable hypothesis” (People v Morgan, 66 NY2d 255, 256 [1985]).
There have been — and undoubtedly will be — cases where, due to the inflammatory words of a prosecutor, examined within the context of the prevailing facts, the standard of justice owed to a criminal defendant in this state will not be achieved. I agree with the majority that such instances cannot be condoned, or the injudicious words of a prosecutor pardoned. I disagree, however, that this is one of those cases.
Davis and Gangel-Jacob, JJ., concur; McKeon, P.J., dissents in a separate memorandum.