■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TONY BENNETT, Appellant. [837 NYS2d 655]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Cooperman, J.), rendered October 21, 1997, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

The defendant was charged, inter alia, with three counts of murder in the second degree (see Penal Law § 125.25 [1], [2], [3]), arising out of the shooting of Jake Powell in his basement apartment. There was no eyewitness to the shooting itself, and the People's case against the defendant rested on testimony that Powell himself had implicated the defendant in the minutes after the shooting. Before opening statements, defense counsel requested that the People disclose to the defense a police report, "DD5 No. 4," which pertained to a witness the police had interviewed. The prosecutor responded that the witness, whom he did not name, "is not on the People's witness list, and it certainly is not Rosario material" (see People v Rosario, 9 NY2d 286 [1961], cert denied 368 US 866 [1961]). When the court pressed the prosecutor, the prosecutor stated that "[a]t this point, that person is not going to testify." Defense counsel immediately stated that she would request a missing witness charge with respect to the witness, whom she correctly believed to be Rickey Davis. The prosecutor said nothing and did not at that point disclose the documents that would constitute Rosario material were Davis a "person whom the prosecutor intend[ed] to call as a witness at trial" (CPL 240.45 [1] [a]). In his opening statement, the prosecutor referred extensively to Powell's dying declaration. Relying on the prosecutor's representations as to Davis, defense counsel opened on and pursued a theory of defense attacking the People's reliance solely on police officers to implicate the defendant. Defense counsel asserted that the police spoke to civilian witnesses "in the apartment" (one of whom was Davis), but that the jury would not "hear from any of them." Instead, the defense would show that the officers had falsely changed their accounts to establish the admissibility of

Powell's alleged dying declaration, without which there was apparently no evidence against the defendant.

After all of the People's other witnesses testified, the prosecutor announced: "we have another witness. The witness's name is Rickey Davis." The prosecutor then gave the defense the *Rosario* material as to Davis and stated that Davis would testify that Powell had implicated the defendant by name even before the police arrived. Defense counsel objected to this late disclosure and moved to preclude Davis's testimony. She argued that the defendant would be prejudiced by the proffered testimony because it would undercut the defense theory. The court denied the motion and recessed the case until after lunch. When the trial resumed, Davis testified that, before the police arrived, he asked Powell who shot him, and Powell said "Tony." Davis also testified that he was still present when Powell told the police that the defendant had shot him.

In his closing argument, the prosecutor told the jury: "And you remember that she told you in her opening that the People will not produce any civilian witness in this case. We did." In response to defense counsel's objection and request for a curative instruction, the court merely explained to the jury that the witness list contained the names of possible witnesses and that Rickey Davis's name was not on that list. The jury convicted the defendant of one count of murder in the second degree.

We agree with the defendant that the prosecutor's conduct deprived him of his right to a fair trial. Put simply, the prosecutor ambushed the defense by his deception regarding his intention to call Rickey Davis as a witness and withholding of the *Rosario* material pertaining to Davis, by his last-minute presentation of Davis's testimony regarding the victim's excited utterance when the police had not yet arrived and the victim's statement to the police as well, and by his capitalizing on these unfair tactics in summation. These tactics led to and then undermined the defense theory that the police had been the only ones to hear the victim's accusation against the defendant and had conformed their testimony to assure its admissibility. Because the instances of prosecutorial misconduct were flagrant and the evidence of guilt was not overwhelming, we reverse the conviction and order a new trial (*see People v Calabria*, 94 NY2d 519, 522 [2000]).

As the defendant concedes, his contention that his conviction was not supported by legally sufficient evidence is unpreserved for appellate review (*see People v Gray*, 86 NY2d 10, 19-21 [1995]), and we decline to review it in the exercise of our interest of justice jurisdiction. Upon the exercise of our factual review

power (*see* CPL 470.15 [5]), we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633, 644-645 [2006]).

In light of our determination here, we need not review any of the defendant's remaining contentions. Schmidt, J.P., Crane, Fisher and Dickerson, JJ., concur.